# MINOR *v.* UNITED STATES

No. 189.   Argued October 15, 1969—
Decided December 8, 1969*

---

*Together with No. 271, *Buie* v. *United States*, also on certiorari
to the same court.

88

*Phylis Skloot Bamberger,* by appointment of the Court, *post,* p. 809, argued the cause for petitioner in No. 189. With her on the briefs was *William E. Hellerstein. David A. Diamond* argued the cause and filed a brief for petitioner in No. 271.

*Peter L. Strauss* argued the cause for the United States in No. 189. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Beatrice Rosenberg,* and *Leonard H. Dickstein. Joseph J. Connolly* argued the cause for the United States in No. 271. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Miss Rosenberg,* and *Mervyn Hamburg.*

Mr. Justice White delivered the opinion of the Court.

These cases raise related questions about the availability of the Fifth Amendment as a defense to convictions for selling narcotic drugs and marihuana without the written order forms required by law.

James Minor, petitioner in No. 189, sold heroin on two separate occasions in 1967 to an undercover narcotics agent. Having waived trial by jury, petitioner was convicted in the United States District Court for the Southern District of New York of selling narcotics not pursuant to a written order on an official form—a violation of § 2 of the Harrison Narcotics Act, now 26 U. S. C. § 4705 (a).[1]

Michael Buie, petitioner in No. 271, sold five packages of marihuana in May 1967 to an undercover narcotics agent. The agent did not have the official order form required for such transactions by § 6 of the Marihuana Tax Act, now 26 U. S. C. § 4742 (a).[2] A jury in the United States District Court for the Southern District of New York convicted petitioner of violating § 4742 (a).

---

[1] Section 4705 (a) provides:

"It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

[2] Section 4742 (a) provides:

"It shall be unlawful for any person . . . to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary or his delegate."

Under 26 U. S. C. § 7237 (b), any person who violates the provisions of §§ 4705 (a) or 4742 (a) "shall be imprisoned not less than 5 or more than 20 years and, in addition, may be fined not more than $20,000."

In separate opinions, the Court of Appeals for the Second Circuit affirmed both convictions over objections in each case that the statutory obligation to sell only in pursuance of an official order form violated petitioner's Fifth Amendment privilege against self-incrimination. *United States* v. *Minor,* 398 F. 2d 511 (1968); *United States* v. *Buie,* 407 F. 2d 905 (1969). We granted certiorari, 395 U. S. 932 and 976, to consider petitioners' Fifth Amendment claims, particularly in light of our intervening decision in *Leary* v. *United States,* 395 U. S. 6 (1969). For the reasons that follow, we affirm the judgments in both cases.

We deal first with No. 271. Under pertinent provisions of the Marihuana Tax Act, 26 U. S. C. §§ 4751–4753, every person who sells, deals in, dispenses, or gives away marihuana must register with the Internal Revenue Service and pay a special occupational tax. The Act also imposes a tax on transfers of marihuana, to be paid by the transferee; the rate for those who have registered and paid the occupational tax is $1 per ounce; for those who have not or who cannot register the rate is $100 per ounce. Under § 4742 (a) it is illegal to transfer marihuana except pursuant to a written order of the transferee on a form obtained by the latter at the time he pays the transfer tax. The order form when issued must carry the name and address of both buyer and seller and the amount of marihuana to be purchased. 26 U. S. C. § 4742 (c). Other provisions of § 4742 require the form to be issued in triplicate, one copy to be retained by the Internal Revenue Service, the other copy to be kept in the buyer's files, and the original to be delivered to the seller and retained by him. 26 U. S. C. § 4742 (d). Both original and copies are open to inspection by federal and state law enforcement officers. 26 U. S. C. §§ 4742 (d), 4773.

Buie argues that because the buyer's order must be on the form issued by the Secretary of the Treasury and

because § 4742 (c) requires the seller's name and address to be on the form before its issuance to the buyer, the seller is forced to incriminate himself: he is forced to insist on an order form linking him to an illicit transaction and in many instances must furnish one of those links himself by giving his name to the buyer so that the latter will have the data necessary to secure the form. Moreover, it is said that the very act of selling pursuant to the order form forces the seller to admit that he is the person named in the document and to acknowledge the sale of specified amounts of marihuana on a specified date; the sale also leads to the further requirement that both seller and buyer retain a copy of the form open to inspection by law enforcement officials.

We have considerable doubt that any of these arguments would withstand close scrutiny,[3] but we find it unnecessary to appraise them in detail because we have concluded that there is no real and substantial possibility that Buie's purchaser, or purchasers generally, would be willing to comply with the order form requirement even if their seller insisted on selling only pursuant to the form prescribed by law.

---

[3] The obligation to furnish the necessary information is in terms placed on the buyer; while his compliance with that obligation may "inform" on the seller, it would not ordinarily be thought to result in the latter's "self-incrimination." Nor is there anything in the record to suggest that buyers cannot get a seller's name except through the seller himself, or that the simple act of selling pursuant to an order form—even assuming the act is "testimonial" for purposes of the Fifth Amendment—adds significantly to the information that the Government has already obtained from the buyer. Finally, whatever the merits of a seller's attempt to assert the privilege in a prosecution for failure to keep and exhibit the order forms, it need not follow that he can similarly dispense with the requirement that he sell only to buyers who first identify themselves, via the order form, as lawful purchasers. Cf. *Nigro* v. *United States,* 276 U. S. 332, 351 (1928); *United States* v. *Doremus,* 249 U. S. 86, 94 (1919).

The situation of the buyer is this: if he applies for the order form he must announce his intention to purchase marihuana—a transaction that, if he is unregistered, will involve a tax of $100 for each ounce of marihuana involved in the impending sale and that is illegal under both federal and state law. We have great difficulty in believing, and nothing in this record convinces us, that one who wishes to purchase marihuana will comply with a seller's request that he incriminate himself with federal and local authorities and pay $100 per ounce in taxes in order to secure the order form. The possibility is particularly unlikely in view of the fact that the Fifth Amendment relieves unregistered buyers of any duty to pay the transfer tax and secure the incriminating order form. *Leary* v. *United States,* 395 U. S. 6 (1969). Except that they are sources of marihuana, sellers have no magic power over buyers; and the characteristics of marihuana do not suggest that buyers would be driven by such urgent need that to get the drug they would incriminate themselves at the seller's behest and pay the prohibitive tax imposed on the transfer. As insistent as sellers might be, it is extremely unlikely that buyers would comply.

Buie's situation thus bears little resemblance to the situation that confronted Leary. The vice of the statute in that case—as in *Marchetti* v. *United States,* 390 U. S. 39, *Grosso* v. *United States,* 390 U. S. 62, and *Haynes* v. *United States,* 390 U. S. 85 (1968)—stemmed from the dilemma that confronted the buyer. The statute purported to make all purchases of marihuana legal from the buyer's viewpoint at his option; all he had to do to avoid the federal penalty was to secure the form and pay the tax. But to exercise that option and avoid the federal penalty, he was forced to incriminate himself under other laws. In the present case, the first horn of this dilemma does not confront the seller. In the

face of a buyer's refusal to secure the order form, the option of making a legal sale under federal law is foreclosed by the buyer's decision, and "full and literal compliance" with the law by the seller means simply that he cannot sell at all.[4] There is no real and substantial possibility that the § 4742 (a) order form requirement will in any way incriminate sellers for the simple reason that sellers will seldom, if ever, be confronted with an unregistered purchaser who is willing and able to secure the order form.

This conclusion is not affected by the fact that there is a tiny number of registered marihuana dealers—some 83 in the entire country according to government figures for 1967.[5] In order to register, dealers must show that they are in compliance with local laws[6] and, when

---

[4] It would have been no answer in *Leary* to suggest that the buyer avoid his dilemma by not buying. See *Marchetti* v. *United States*, 390 U. S. 39, 51–52. But the buyer in *Leary*, unlike the seller here, was presented with the possibility of both purchasing and complying with the federal law, if he would only incriminate himself. In the present case, compliance by selling is foreclosed as a viable option, not because the seller might incriminate himself, but because the buyer refuses to meet a specified condition. Nothing in the Fifth Amendment prevents Congress from restricting a seller's market to specified classes of duly licensed buyers. And although the buyer's refusal to comply with the Act's requirements may stem from his fear of incrimination, the buyer's personal privilege cannot be raised by the seller as an excuse for evading the clear statutory requirement. See *George Campbell Painting Corp.* v. *Reid*, 392 U. S. 286 (1968); *Rogers* v. *United States*, 340 U. S. 367 (1951).

[5] U. S. Treasury Department, Bureau of Narcotics, Traffic in Opium and Other Dangerous Drugs 42 (1968).

[6] The regulations, 26 CFR §§ 152.22, 152.23, which limit registration to persons whose dealings are legal under relevant state and local laws, are supported by the legislative history and represent what is by now long-established administrative practice. See *Leary* v. *United States*, 395 U. S. 6, 24 n. 38 (1969); H. R. Rep. No. 792, 75th Cong., 1st Sess., 2 (1937); S. Rep. No. 900, 75th Cong., 1st Sess., 3 (1937); Hearings on H. R. 6906 before a subcommittee of

registered, can get order forms by paying a transfer tax of only $1 per ounce. A registered dealer is thus not subject to the deterrent pressures operating on the unregistered dealer. But the possibility that a registered dealer would present an order form to an unregistered seller like Buie is itself a hypothesis more imaginary than real; any buyer who can purchase marihuana from a legitimate source is hardly likely to find it to his advantage to secure the drug instead on the illegal market. In any event, it is quite clear in this case that Buie's customer was not a registered dealer. Nor is there anything to suggest that he would have been willing or able to get an order form had he been asked.

No. 189. The same result must follow in Minor's case and for similar reasons. The Harrison Narcotics Act, 26 U. S. C. § 4701 *et seq.*, applies to various drugs, including heroin. Dealers must register and pay an occupational tax, 26 U. S. C. §§ 4721–4722; producers or importers who sell must purchase stamps and affix them to the package, 26 U. S. C. §§ 4701, 4703, 4771 (a)(1); and it is illegal to purchase or sell except from the original stamped package, 26 U. S. C. § 4704 (a). As in the case of the Marihuana Tax Act, all transfers, with exceptions not relevant here, must be made pursuant to a written order form issued by the Government. 26 U. S. C. § 4705 (a). Only dealers who are in compliance with state law may register, and only registered dealers may secure order forms. 26 U. S. C. §§ 4705 (f), (g); see 26 U. S. C. § 4721; 26 CFR § 151.24. Order forms are issued in triplicate to proper applicants and are stamped only with the name of the prospective purchaser. 26 U. S. C. § 4705 (f); 26 CFR § 151.161.

the Senate Committee on Finance, 75th Cong., 1st Sess., 6 (1937); Hearings on H. R. 6385 before the House Committee on Ways and Means, 75th Cong., 1st Sess., 8 (1937).

When a purchaser decides to execute a form, he fills in the exact date of the order and the number and type of drugs requested and signs his name to the form. 26 CFR §§ 151.163–151.165, 151.167. The purchaser retains the duplicate and delivers the original and the triplicate thus executed to the seller, who enters the number and size of the stamped packages furnished and the date when each item is filled. 26 CFR §§ 151.161 (a), 151.185. A regulation, 26 CFR § 151.201, requires the seller to forward the triplicate to the Internal Revenue Service at the end of the month. Section 4705 (d) of the Act requires both seller and buyer to keep their respective copies for a period of two years and to make them accessible to inspection by law enforcement officers.

The order form provisions for narcotic drugs thus differ from the marihuana provisions in three principal respects. First, the prospective seller's name does not have to be given to the Government when the order form is secured, but is filled in only when the form is subsequently executed.[7] Second, although the marihuana seller apparently does not have to add anything to the order form in making the sale, the seller of narcotics must enter the amounts sold and the dates. Finally, unlike the Marihuana Tax Act, which at least in theory permits any person to buy as long as the transfer tax is paid, the Harrison Narcotics Act explicitly forbids the sale of order forms to any but registered dealers and permits registra-

---

[7] It is not specified in either the statute or the regulations when the blank for the seller's name is filled in or by whom. But the form itself is addressed "to" the seller, and the form and the regulations contain provisions that enable a form "made out to" one seller, to be endorsed by him to another if the first seller cannot fill the order. See 26 CFR § 151.189. This suggests that it is the buyer who fills in the seller's name when he sends in the order. Whether or not that is the case in fact is irrelevant under the analysis in the text.

tion only by those "lawfully entitled" under the laws of their State to deal in the drug.[8]

Like Buie, Minor argues that compliance with the order form provision would compel him to give incriminating information to be preserved in his and the buyer's files and to be made readily accessible to law enforcement agents. Like Buie's argument, Minor's argument assumes that an order form would otherwise be forthcoming if he refused to sell without it[9] and founders if in reality there is no substantial possibility that the buyer would or could have secured an order form. As in Buie's case, we are convinced that this possibility is an unreal one. Prospective buyers who have either failed to register or cannot register because their dealings in the drug are illicit—and petitioner himself strenuously argues that virtually all dealings in heroin are illicit[10]—simply

---

[8] The difference between the availability of order forms under the Harrison Narcotics Act and the Marihuana Tax Act was explicitly recognized by Congress when it passed the latter Act. See *Leary* v. *United States,* 395 U. S. 6, 21–22 (1969). The regulation restricting registration to those "lawfully entitled" to deal in narcotic drugs, 26 CFR § 151.24, finds specific support in the language of the Act. See 26 U. S. C. §§ 4705 (g), 4721.

[9] Even if order forms could realistically be secured, Minor's Fifth Amendment arguments are no more persuasive than Buie's. See n. 3, *supra.*

[10] See Brief for Petitioner 22–23. Convinced that "[h]eroin has no medical value that is not better served by legitimate drugs," S. Rep. No. 1997, 84th Cong., 2d Sess., 7 (1956), Congress in 1956 required the surrender of all theretofore lawfully possessed heroin, to be distributed only as approved by the Secretary for purposes of scientific research. 18 U. S. C. § 1402. The Narcotic Drugs Import and Export Act, 35 Stat. 614, as amended, 21 U. S. C. §§ 173, 174, effectively prohibits the importation of heroin or of opium for the purpose of manufacturing heroin, and makes it a felony to traffic in drugs knowing them to have been unlawfully imported. The Narcotics Manufacturing Act of 1960, 74 Stat. 55, 21 U. S. C. § 501 *et seq.,* prohibits the manufacturing of heroin except as authorized for limited scientific purposes. Given the resulting absence of orig-

are not among the class of persons to whom sellers are permitted to sell under any condition. When dealing with buyers in this class, the seller faces no risk of incrimination by reason of § 4705 (a) since there will be and can be no order form involved. Confronted with would-be buyers in this class, "full and literal compliance" with § 4705 (a) leaves the seller only one alternative: not to sell. Since from this record it is clear that Minor's customer was not a registered buyer, the alleged possibility of incrimination is purely hypothetical.

We doubt that our conclusion would be different even if Minor's customer were registered. It is true that there were some 400,000 registered dealers under the Harrison Narcotics Act in 1967 [11] and that registered dealers can readily get order forms issued in blank. It is conceivable, of course, that a registered dealer would seek to buy heroin on the illegal market, but it is difficult to imagine that he would enter the name of an unregistered seller on the order form and make a record of what would surely be an illegal sale.[12] Such unlikely possibilities

---

inal stamped packages of heroin, 26 U. S. C. § 4704 (a) effectively forbids buying, selling, dispensing, or distributing the drug. Since for all practical purposes there is thus no legitimate dealing in heroin, any attempt to use an order form to purchase the drug would almost certainly subject the buyer to prosecution under 26 U. S. C. § 4705 (g):

"It shall be unlawful for any person to obtain by means of said order forms narcotic drugs for any purpose other than the use, sale, or distribution thereof by him in the conduct of a lawful business in said drugs or in the legitimate practice of his profession."

[11] See U. S. Treasury Department, Bureau of Narcotics, Traffic in Opium and Other Dangerous Drugs 22, 42 (1968).

[12] Even if the hypothetical became a reality, it is doubtful that the incriminating information would get back to the Government via the buyer, who would himself be guilty of a violation of the narcotics laws. See n. 10, *supra*. See also 26 CFR § 151.181, which provides that order forms may be filled only by registered sellers— a class to which Minor does not belong. It is significant that of the

present only "imaginary and insubstantial" hazards of incrimination, rather than the "real and appreciable" risks needed to support a Fifth Amendment claim.[13]

The judgments in both cases are affirmed.

*It is so ordered.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS dissent in No. 271.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting in No. 189.

The guilt of petitioner on this record seems plain. Two counts charge sales of heroin on two different dates in 1967 "not in pursuance of a written order . . . form." He was found guilty on each count by the District Court, a trial by jury having been waived. The basis of his

nearly 400,000 registered dealers in 1967, only four were reported during that year for a violation of the narcotics laws. See U. S. Treasury Department, Bureau of Narcotics, Traffic in Opium and Other Dangerous Drugs 22 (1968).

[13] The dissent suggests that the courts should refuse to enforce § 4705 (a) as part of a revenue measure. But these very order form provisions were upheld long ago as valid revenue laws even though they operated to prevent large classes of people from obtaining order forms—and hence from acquiring drugs—at all. *United States* v. *Doremus,* 249 U. S. 86 (1919); *Webb* v. *United States,* 249 U. S. 96 (1919); see *Nigro* v. *United States,* 276 U. S. 332 (1928). A statute does not cease to be a valid tax measure because it deters the activity taxed, because the revenue obtained is negligible, or because the activity is otherwise illegal. See, *e. g., Marchetti* v. *United States,* 390 U. S. 39, 44 (1968); *United States* v. *Kahriger,* 345 U. S. 22, 28 (1953); *License Tax Cases,* 5 Wall. 462 (1867).

Even viewing § 4705 (a) as little more than a flat ban on certain sales, it is sustainable under the powers granted Congress in Art. I, § 8. See *Yee Hem* v. *United States,* 268 U. S. 178, 183 (1925). *Brolan* v. *United States,* 236 U. S. 216, 222 (1915); cf. *United States* v. *Sullivan,* 332 U. S. 689 (1948); *United States* v. *Darby,* 312 U. S. 100 (1941).

attack upon his conviction in this Court is that the requirement of an order form violates his privilege against self-incrimination. But that is not the end of the matter for me. Mr. Justice Holmes used to say that one dealing with the Government should turn square corners. See *Rock Island, A. & L. R. Co.* v. *United States,* 254 U. S. 141, 143. When the present all-powerful, all-pervasive Government moves to curtail the liberty of the person, it too should turn square corners.

The statute involved in this case, 26 U. S. C. § 4705 (a), was derived from the Anti-Narcotic Act of December 17, 1914, 38 Stat. 785, commonly called the Harrison Narcotics Act. This Act, as amended, imposes an occupational tax on registered dealers in narcotics, 26 U. S. C. §§ 4721–4722, and also imposes a commodity excise tax on narcotics sold or removed for consumption or sale, 26 U. S. C. § 4701. Under § 4705 (a), with certain exceptions not relevant here, all transfers of narcotics must be made pursuant to an official order form given to the transferor by the transferee. The order form can be obtained only by persons properly registered to deal in narcotics. It was conceded by the Government on oral argument, however, that "it is impossible to secure an order form for the purchase of heroin. . . . The order forms may only be used to purchase a lawful drug for a lawful purpose. Heroin is an unlawful drug for which there is no lawful purpose."

The Federal Government does not have plenary power to define and punish criminal acts. Its power in this regard derives from other powers specifically delegated to it by the Constitution, as the Tenth Amendment provides:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

Section 4705 (a) derives from the power to "lay and collect Taxes." Art. I, § 8. Its constitutionality on this basis was sustained in *United States* v. *Doremus,* 249 U. S. 86—a five-to-four decision. It was there said that the "order form" requirement tended "to keep the traffic aboveboard and subject to inspection by those authorized to collect the revenue," and also tended "to diminish the opportunity of unauthorized persons to obtain the drugs and sell them clandestinely without paying the tax imposed by the federal law." *Id.,* at 94.

As I view this case, the Government is punishing an individual for failing to do something that the Government has made it impossible for him to do—that is, obtain an order form from the prospective purchaser prior to making a sale of heroin. Petitioner did, of course, have the option not to sell the heroin, and in that sense his compliance with the statute was indeed quite possible. This argument, however, overlooks the fact that the statute does not simply outlaw all sales of heroin. The critical interest of the Government is necessarily in the collecting of the tax imposed by the Act, and it is the order form which provides the crucial link to this proper constitutional purpose. In *Nigro* v. *United States,* 276 U. S. 332, 341, Chief Justice Taft, speaking for the Court, said:

"In interpreting the Act, we must assume that it is a taxing measure, for otherwise it would be no law at all. If it is a mere act for the purpose of regulating and restraining the purchase of the opiate and other drugs, it is beyond the power of Congress and must be regarded as invalid . . . ."

Thus it is the order form—not the mere sale—that constitutes the heart of the offense for which this petitioner was convicted. I do not see how the Government can make a crime out of not receiving an order form

and at the same time allow no order forms for this category of sales.

Nor is it relevant to suggest, as does the majority opinion, *ante,* at 98 n. 13, that a statute imposing a flat ban on sales of heroin might be sustainable under the Commerce Clause. We are concerned in this case with what the Congress did, not with what it might have done or might yet do in the future. It is clear that what Congress did in § 4705 (a) was to enact a taxing measure. And the crime charged was not selling heroin, but selling it "not in pursuance of a written order . . . form," as prescribed in § 4705 (a).

I would reverse this judgment of conviction.