UNITED STATES OF AMERICA *v.* BLACK.

(No. 20076—Decided September 14, 1970.)

United States Court of Appeals, Sixth Circuit.

*Mr. Gilbert A. Sheard* (court appointed), for appellant.
*Robert A. Steinberg* (*Mr. William W. Milligan,* United States Attorney, on the brief), for appellee; *Mr. Clarence E. Price,* Internal Revenue Service, of counsel.

Before WEICK, McCREE, Circuit Judges, and O'SULLI-VAN, Senior Circuit Judge.

WEICK, Circuit Judge. Appellant Black has appealed from a judgment of conviction entered upon his plea of guilty to information which charged:

"That on or about the 18th day of August 1969, in the Southern District of Ohio, at Cincinnati, Ohio, Carl Randle Black knowingly did possess a firearm, that is, a weapon made from a twelve-gauge single barrel Winchester shotgun, with a barrel length of twelve and one-half (12½) inches and an overall length of less than 26 inches, Serial Number 051471, which had not been registered to him in the National Firearms Registration and Transfer Record maintained under Section 5841, Title 26, United States Code;

"All in violation of Section 5861(d), Title 26, United States Code."

The statute which the information charges was violated is the Gun Control Act of 1968, which became effective November 1st of that year and, among other things, made it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms, Registration and Transfer Record." 26 U. S. Code, Section 5861(d) (Supp. 1970).

Black had waived indictment and filed a motion to dismiss the information on the ground that the registration requirements under the statute violated his privilege against self-incrimination as guaranteed by the Fifth Amendment. The District Court denied the motion to dismiss. Black then pleaded guilty, but reserved the right to appeal from the denial of his motion to dismiss. In lieu of a transcript, additional facts were stipulated.[1]

---

[1] At approximately 7:30 p. m. on August 18, 1969, Cincinnati Policeman Chris Waldeck was on patrol near the corner of 14th & Vine Sts., Cincinnati, Ohio. He was stopped by a small boy who stated that a man of a certain description was standing in front of Corky's Cafe Tavern with a large gun stuck in his trousers. Patrolman Waldeck pulled up to the front of the Tavern and observed appellant, Carl Randle Black, who fit the description previously furnished, and who appeared to have a large object under his belt. Upon seeing Patrolman Waldeck, Black ran inside the Tavern.

Patrolman Waldeck entered the Tavern and observed Black in the rear of the room attempting to remove a large weapon from under his belt. The Patrolman placed Black under arrest and confiscated the weapon, a Winchester 12 gauge single barrel shotgun, having a barrel

In his brief, Black admitted that he did not possess the sawed-off shotgun prior to the effective date of Title II of the Gun Control Act of 1968. He also stated therein that he obtained possession of the shotgun by transfer or by manufacture after the expiration of the statutory amnesty period ending December 1, 1968.

Black contends that registration provisions of the Act are violative of his privilege against self-incrimination under the Fifth Amendment, relying principally on *Hayes* v. *United States* (1968), 390 U. S. 85, 88 S. Ct. 722, 19 L. Ed. 2d 923; *Marchetti* v. *United States* (1968), 390 U. S. 39, 88 S. Ct. 697, 19 L. Ed. 2d 889; *Grosso* v. *United States* (1968), 390 U. S. 62, 88 S. Ct. 709, 19 L. Ed. 2d 906; *Leary* v. *United States* (1969), 395 U. S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57.

In *Haynes*, the Supreme Court held that the assertion of the privilege against self-incrimination was a complete defense to a prosecution under the provisions of the National Firearms Act prior to its Amendment in 1968 either for the failure to register a firearm under former Section 5841 of Title 26 or for possession of an unregistered firearm under former Section 5851 of Title 26. The statutory scheme then in force provided that not every possessor of a firearm had to register. One who made the firearm in compliance with the statute, or who acquired it by transfer in compliance with the statute did not have to register. 26 U. S. Code, Section 5841. If the statutory requirements respecting making or transfer were not met, then one who possessed a firearm had to fill out a form. 26 U. S. Code, Section 5841. The Act's requirements on registration and

---

length of 12½ inches. The sawed-off shotgun had a round of ammunition in the chamber, and Patrolman Waldeck confiscated 22 live rounds of ammunition from the trouser pockets of Black.

After being advised of his constitutional rights, Mr. Black stated, "Give me my gun, I am going to kill ever nigger in Cincinnati." Black gave his name as William John Albert, but later admitted his correct name.

Mr. Black is 37 years old. His criminal record dates back to 1952 and includes arrests and convictions for 3 felonies, including manslaughter and more than 10 misdemeanors, mainly involving assaults.

taxation only applied to certain classes of firearms which "intended to guarantee that only weapons used principally by persons engaged in unlawful activities would be subjected to taxation." *Haynes* v. *United States*, 390 U. S. at 87, 88 S. Ct. at 725. The tax on the making and transfer of the firearms was supplemented by comprehensive provisions requiring that any possessor fully identify himself as the maker or the transferee of the firearm. A person had to file a notification to make the firearm and prepay the tax before making the firearm, as well as provide the Treasury with his fingerprints and photographs. 26 U. S. Code, Section 5821(e); Treas. Reg. Section 179.78. A transferor could lawfully transfer the firearm only if he first obtained a written order form from the transferee. 26 U. S. Code, Section 5814(a). The application had to be approved by the Secretary and supported by a certificate of the local chief of police and accompanied by the transferee's fingerprints and photograph. Treas. Reg. Sections 179.98, 179.99. Under 26 U. S. Code, Section 5841, every possessor of such a firearm had to register his possession if he had not complied with the Act's requirements as to transfer and making. Failure to comply with any requirement of the Act was a felony. 26 U. S. Code, Section 5861. Further, Section 5851 made it a crime to receive or possess a weapon made or transferred in violation of specific sections of the Act including Section 5821 and Section 5814, or "to possess any firearm which has not been registered as required by Section 5841."

Haynes was indicted under Section 5851 for knowingly possessing a firearm not registered under Section 5841. The court held first that the elements of the offense of Section 5851 were identical with those of Section 5841. The court rejected the government's argument that Section 5851 was intended only to punish the acquiring of an unregistered firearm while Section 5841 punished a failure to register the firearm. The court declined to limit Section 5851 to possession of the kind of firearm that had already become an illicit weapon before the defendant acquired it. The court interpreted Section 5851 as apply-

ing to any possessor who up to the time at which he was charged had not registered the firearm.

The Supreme Court considered the question of whether enforced registration would have compelled self-incrimination. The court found a high correlation between the obligation to register and other violations in the statutory scheme since the registration required to avoid Section 5851 prosecution would mainly be by possessors who had obtained the firearms "* * * without complying with the Act's other requirements, and who therefore are immediately threatened by criminal prosecutions under Sections 5851 and 5861. * * *''[2] 390 U. S. 96, 88 S. Ct. at 730.

Compliance with the registration requirements of Section 5851 would almost necessarily have disclosed a prior unlawful act since the presence of such unlawful act was necessary in the first instance in order to activate the registration requirements, except in certain remotely possible circumstances.

The court concluded that the hazards of incrimination created by the registration requirements were "real and appreciable" and therefore the assertion of the privilege against self-incrimination constituted a complete defense. The court refused to impose restrictions upon the use by state and federal authorities of information obtained as a consequence of the registration requirement.[3] See, *Marchetti* v. *United States* (1968), 390 U. S. 39, 88 S. Ct. 697, 19 L. Ed. 2d 889.

In *Haynes*, the defendant was charged with violation of the National Firearms Act. Black, however, was con-

---

[2] For example: for having failed to furnish a Section 5814(a) order form to the transferor, or by failing to file under Section 5821(e) a declaration of intention to make the weapon. Such failures were punishable under Section 5861.

[3] 26 U. S. Code, Section 6107 permitted local authorities to obtain a list of the names of persons who paid the occupational tax imposed by Section 5801. This disclosure provision, however, was not applicable to the making and transfer taxes imposed by Section 5811 and Section 5821. 26 U. S. Code, Section 6107 has been repealed by Section 203 of the Gun Control Act of 1968.

victed for a violation of the Gun Control Act of 1968,[4] which was enacted by Congress subsequent to *Haynes* for the purpose of amending the National Firearms Act in order to eliminate the provisions which the Supreme Court held objectionable. 1968 U. S. Code Cong. & Adm. News, p. 4435.

Title II (The National Firearms Act) 26 U. S. Code, Section 5801 *et seq.* (Supp. 1970), like its predecessor, deals with classes of firearms peculiarly identified with unlawful activities. The National Firearms Act prior to the 1968 amendment covered gangster-type weapons such as machineguns, sawed-off shotguns, short-barreled rifles, mufflers and silencers. See former Section 5848(1) of Title 26. The amended section, 26 U. S. Code, Section 5845(a) covers the same type of weapons and further includes destructive devices. 26 U. S. Code, Section 5845(a) (8). The National Firearms Act, as amended, still applies to the type of firearms identifiable generally and broadly, if not exclusively, with criminal activities.[5]

The present statutory scheme, however, differs from the old National Firearms Act in that a present possessor is not required to register the firearm. Under the old statute, if a person possessed the firearm as a transferee and was in violation of the statute because he had not issued the required order form, the possessor-transferee was under a duty to register. If he failed to register, he was indictable for failure to register as a mere possessor. If he chose to register in order to comply with the law, his registration disclosed his prior criminal neglect. He was required to incriminate himself as to other statutory violations in order to comply with the statute.

The dilemma which confronted Haynes did not concern Black under the present statute. Black was convicted for possessing an unregistered firearm. The duty to reg-

---

[4]Public Law 90-618, 90th Congress, 82 Stat. 1213, 26 U. S. Code, Section 5861(d) (Supp. 1970).

[5]Compare: 18 U. S. Code, Section 921(a) (3) (Supp. 1970), which contains the Amendments by the Gun Control Act of 1968 and regulates the licensing of all common weapons, even including a starter gun.

ister, however, was not on him but on the manufacturer, importer, transferor or maker. The Treasury Department's authorization to make or transfer a firearm must be obtained before the making or the transfer and such authorization effects registration, 26 U. S. Code, Section 5841(b), (c), Section 5812 and Section 5822 (Supp. 1970). The transfer application will be denied if the transfer would place the transferee in violation of law. 26 U. S. Code, Section 5812(a) (6). The same rule applies to the making of a weapon. 26 U. S. Code, Section 5822(e).

There is no provision enabling a possessor to register the firearm. A transferee-possessor could not register under the Act once he has taken possession, although it is unlawful for him to take possession unless the Treasury Department has approved the transfer and the registration. Similarly, the maker must obtain authorization prior to the making. A maker-possessor who had not complied with the statutory notification procedure would not, as a possessor, be under a duty to register and thereby disclose his earlier default, although he would be guilty of possessing an unregistered firearm under Section 5861(d).

Under the present statutory scheme, a possessor commits an offense only for his voluntary election to possess a firearm that is contraband because it is unregistered. There is no requirement under the statutes by which a possessor could be compelled to incriminate himself. In fact, he cannot incriminate himself because he cannot register the firearm.

In *Minor* v. *United States* (1969), 396 U. S. 87, 90 S. Ct. 284, 24 L. Ed. 2d 283, the Supreme Court rejected defendant's Fifth Amendment defense to a conviction for selling narcotic drugs without the written order form supplied by the buyer as required by 26 U. S. Code, Section 4705(a). In *Leary* v. *United States* (1969), 395 U. S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57, the constitutional defect in the statutes was that all the buyer had to do to avoid federal penalty was to secure the order form, however, in order to avoid that particular penalty, he was forced to incriminate himself under other laws. In *Minor*:

"\* \* \* the first horn of this dilemma does not confront the seller. In the face of the buyer's refusal to secure the order form, the option of making a legal sale under federal law is foreclosed by the buyer's decision, and 'full and literal compliance' with the law by the seller means simply that he cannot sell at all." 396 U. S. at 92-93, 90 S. Ct. at 287.

The crucial point is that in *Leary,* the buyer of drugs "was presented with the possibility of both purchasing and complying with the federal law, if he would only incriminate himself." 396 U. S. at 93 n. 4, 90 S. Ct. at 287.

Black is in the same position as *Minor, i. e.,* he could only comply with the law by not possessing the contraband. He did not have the option of complying with the law if he would only incriminate himself.

Black further contends that in order to comply with the registration requirements under the Act, he would incriminate himself under state law.

In *Haynes,* the Supreme Court did not reach this issue since there was not any state statute in Texas making it a crime to possess a sawed-off shotgun. In dictum, the court stated:

"We must note, however, that certain of these prospective registrants might be threatened by prosecution under state law for possession of firearms, or similar offences. It is possible that such persons would be obliged, if they registered in compliance with Section 5841, to provide information incriminating to themselves. Such hazards would, of course, support a proper claim of privilege." 390 U. S. at 97, n. 11, 88 S. Ct. at 730, 19 L. Ed. 2d 923.

Under Ohio law, provision is made for permits of such weapons.

"No person shall own, possess, transport, have custody of, or use a shotgun with barrel less than eighteen inches in length, or rifle with a barrel of less than sixteen inches in length, or shotgun or rifle with an overall length of less than twenty-six inches, or machine gun, light machine gun or submachine gun, unless he first procures a permit therefor from and at the discretion of the adjutant general, or having such permit, use or consent to the use by another of such weapon in an unlawful manner. \* \* \*

"Whoever violates this section shall be imprisoned not less than one nor more than ten years." R. C. 2923.04.

The state of Ohio, Adjutant General's Department, reported that only three short-barreled shotguns are presently covered by permits. Black contends that for all practical purposes sawed-off shotguns are illegal in Ohio. His contention is that the registration requirements under the Act would incriminate him under Ohio law.

The government contends that there is not any "real and appreciable" hazard of self-incrimination. If the making of the firearm is unlawful under state law, the application will be denied. 26 U. S. Code, Section 5822(e). If the transfer would place the transferee in violation of the state law, the application will be denied. 26 U. S. Code, Section 5812(a) (6). Since Black could not register the firearm, the only way he could incriminate himself was to possess the firearm. Further, the restrictive provisions of 26 U. S. Code, Section 5848 prohibit the use of any information or evidence obtained from an application or registration required under the Act. This evidence cannot be used, directly or indirectly, as evidence in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration.⁶

Black further contends that the restrictive provisions do not operate to protect him from the likelihood of prosecution for future acts. See, *United States* v. *Schofer* (E. D. N. Y. 1969), 310 F. Supp. 1292, 1296.

---

⁶Section 5848. *Restrictive use of information*

*(a) General rule.*—No information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of this chapter or regulations issued thereunder, shall, except as provided in subsection (b) of this section, be used, directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence.

*(b) Furnishing false information.*—Subsection (a) of this section shall not preclude the use of any such information or evidence in a prosecution or other action under any applicable provision of law with respect to the furnishing of false information.

We do not reach this issue. Black was convicted for possessing an unregistered firearm in violation of 26 U. S. Code, Section 5861(d). He was not charged with failing to file an application to make the firearm, which would be a violation of 26 U. S. Code, Section 5861(f). He was not charged with receiving or possessing a firearm made in violation of the Act. 26 U. S. Code, Section 5861(c). Nor was he charged with receiving or possessing a firearm transferred to him in violation of the provisions of the Act, a violation under 26 U. S. Code, Section 5861(b). Here, Black was only charged with possession of contraband, i. e., an unregistered firearm. He was not charged with violation of any provisions of registration which would be a prerequisite to lawful possession. These are distinct offenses under the Act.

The conviction of the defendant for possession of an unregistered firearm in violation of 26 U. S. Code, Section 5861(d) does not violate his Fifth Amendment privilege against self-incrimination. The judgment of the District Court is affirmed.[7]

---

[7]The only decisions dealing with the Gun Control Act of 1968 and the assertion of the defense of violation of the Fifth Amendment privilege against self-incrimination which have come to our attention are *United States* v. *Melville* (S. D. N. Y. 1970), 309 F. Supp. 774; *United States* v. *Schofer* (E. D. N. Y. 1969), 310 F. Supp. 1292; *United States* v. *Schultzler* (S. D. Ohio, 1969), 309 F. Supp. 681; *United States* v. *Britton* (S. D. Tex. 1969), 306 F. Supp. 94; *United States* v. *Cobb* (W. D. Tenn. 1969), Crim. No. 69-19. These decisions all rejected this defense to a charge of possession in violation of the Gun Control Act of 1968. In *United States* v. *Schofer, supra,* the District Court sustained the defense with respect to a charge of unlawful transfer in violation of 26 U. S. Code, Section 5861(e) but not to a charge for violation of 26 U. S. Code, Section 5861(d).