**UNITED STATES of America,
Appellee,**

v.

**Carlos SMART, Appellant.**

**No. 601, Docket 33854.**

United States Court of Appeals,
Second Circuit.

Argued March 2, 1971.

Decided June 18, 1971.

Bobby C. Lawyer, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the S. D. N. Y., and Jay S. Horowitz, Asst. U. S. Atty., on the brief), for appellee.

Gerald L. Goettel, New York City, for appellant.

Before LUMBARD, KAUFMAN and ANDERSON, Circuit Judges.

LUMBARD, Circuit Judge:

Carlos Smart appeals from a judgment of conviction, entered on July 24, 1969, after a jury trial in the Southern District of New York, Harold R. Tyler, J., on one count of conspiracy to violate 26 U.S.C. §§ 4705(a) and 7237(b) (selling cocaine without a written order form),[1] on one substantive count of violating those sections, and on one count of concealing illegally imported cocaine in violation of 21 U.S.C. §§ 173 and 174.[2] Smart was sentenced to concurrent prison terms of five years on the conspiracy count and ten years on each substantive count, and he is presently serving his sentence. We affirm the convictions below.

Smart was indicted with two codefendants, Jose Vasquez and Enrique Kremen. Count I charged all three with conspiracy to dispense cocaine without a written order form in violation of 26 U.S.C. §§ 4705(a) and 7237(b); Count II charged Smart alone with selling 0.315 grams of cocaine in violation of those sections;

1. "Until May of this year, § 4705(a) provided:

"It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

Section 7237(b) prescribes the penalty for violating § 4705(a).

Effective May 1, 1971, these sections were repealed. Pub.L. 91–513, Title III, § 1101(b) (3) (A), Oct. 27, 1970, 84 Stat. 1292. The repeal is part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq. Under the new Act, Congress has prohibited the unauthorized possession of drugs, § 404(a), 21 U.S.C. § 844(a), or the unauthorized manufacture, distribution, or dispensation of drugs, or the unauthorized possession of drugs with intent to manufacture, distribute, or dispense, § 401(a), 21 U.S.C. 841(a).

2. Section 173 prohibited the importation of narcotic drugs into the United States. Section 174 provided for the punishment of those who illegally imported narcotics or who, with knowledge of the illegal importation, facilitated the "transportation, concealment, or sale" of an illegally imported narcotic drug.

These sections were also repealed pursuant to the new Act, see note 1 *supra*. Pub.L. 91–513, Title III, § 1101(a) (2), Oct. 27, 1970, 84 Stat. 1291.

Count III charged Vasquez alone with possession of 1.4 grams of illegally imported cocaine, knowing such to have been illegally imported, in violation of 21 U.S.C. §§ 173 and 174; and Count IV charged all three with concealing 831 grams of illegally imported cocaine, knowing the same to have been illegally imported, in violation of §§ 173 and 174. Prior to trial, the charges against Kremen were severed, but Smart and Vasquez were tried together. On June 27, 1969, the jury found both defendants guilty on all counts in which they were named. Vasquez appealed separately; his conviction on Count I was affirmed, but his convictions on Counts III and IV were reversed and a new trial was ordered on those counts. United States v. Vasquez, 429 F.2d 615 (2d Cir. 1970).

The facts in this case are quite simple. On December 4, 1968, Peter Scrocca, an undercover agent of the Bureau of Narcotics and Dangerous Drugs, was introduced by an informer to Carlos Smart. Smart told Scrocca that he could obtain cocaine from Bolivia and named a price of $12,000 per kilogram if the cocaine was to be delivered in New York. After Scrocca indicated an interest in doing business, Smart gave him a sample, which was later found to contain .315 grams of cocaine, and which formed the basis for Count II of the indictment. Smart neither asked for nor received an order form for this cocaine.

On December 20, 1968, at about 10:00 p. m., Scrocca and the informant again met Smart, who stated that the price had risen to $13,000 per kilo and that he still had to make final arrangements. About two hours later, Scrocca and the informant again met Smart, and all three men drove to an apartment building at 152 East 46th Street, Manhattan, which Smart stated was his new residence. Scrocca waited in the car while Smart and the informant entered the building. When they returned Smart told Scrocca that delivery had already been made by his associates, but that these associates had to come from Queens to consummate the transaction. Returning later that night, Scrocca and the informant entered Smart's apartment, finding Smart, Vasquez, and Kremen all present. Kremen and Smart then directed Scrocca to a couch on which rested two bags of white powder. That powder was subsequently established to be 831 grams of cocaine mixed with adulterants and it formed the basis of Count IV of the indictment.

Scrocca immediately arrested Smart and his associate, and at this point other narcotics agents entered the apartment. The agents then searched the defendants and the apartment, finding in a coat belonging to Vasquez the cocaine underlying Count III.

At trial, defense counsel called four witnesses who testified that the wood panel door to Smart's apartment was intact at various times on or before December 20, 1968, but that one of the four panels was missing on the morning of December 21. One of these witnesses, who occupied an adjoining apartment, also testified that at some point on the morning of the arrest he heard a voice in the bathroom common to both apartments threatening, "If you expect to live any longer you will tell us where it is." Neither defendant testified in his own behalf.

Smart's first contention is that his conviction on Count IV must be reversed because it may have been based upon the provision of 21 U.S.C. § 174 that importation and knowledge of importation may be presumed from proof of possession, unless the defendant explains the possession to the satisfaction of the jury.[3] According to Smart, that statu-

---

3. The second paragraph of § 174 contained the challenged provision:
   Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

tory presumption was declared unconstitutional by the Supreme Court in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). This case was tried before the decision in *Turner*, and Judge Tyler did instruct the jury that they could convict on the basis of the § 174 presumption. Because of *Turner*, Smart contends, that instruction was constitutionally impermissible, and direct evidence both of the cocaine's importation and of his knowledge of that importation was necessary for his conviction. Although he concedes that there was direct evidence proving these elements as to the cocaine involved in Count II, he argues that this evidence did not relate to the cocaine charged in Count IV. Alternatively, he argues that even if the direct evidence did relate to Count IV, the court's charge nonetheless improperly permitted the jury to rely upon the statutory presumption in determining his guilt on that count.

Smart also cites the decision of this Court in *Vasquez, supra,* where the panel, relying on *Turner*, reversed codefendant Vasquez's conviction on Count IV for this very reason. In discussing *Turner* in that case, Judge Feinberg, writing for the Court, recognized that the Supreme Court had declared the § 174 presumption unconstitutional merely with respect to a small quantity of cocaine (there, less than one gram) and had left open the question whether the presumption might be rational when applied to large quantities of cocaine. He quoted from the *Turner* opinion as follows:

" 'Since the illegal possessor's only source of domestic cocaine is that which is stolen, the United States urges that the § 174 presumption may be valid with respect to sellers found with much larger amounts of cocaine than Turner had, amounts which, it is claimed, are too large to have been removed from legal channels and which must therefore have been smuggled. * * * We find it unnecessary to deal

with the problems and postpone their consideration to another day, hopefully until after the facts have been presented in an adversary context in the district courts' " [396 U.S. at 419 n. 39, 90 S.Ct. at 654]. 429 F.2d at 618.

Judge Feinberg, however, went on to reject the government's invitation to affirm the validity of the presumption as applied to large amounts of cocaine. He stated that "the best test of the rationality of the presumption as applied to Count Four will be after an adversary hearing in the district court," 429 F.2d at 618, and hence he ordered a new trial on that count.

We reject Smart's contention. Our most recent pronouncement on this issue is United States v. Gonzalez, 442 F.2d 698, at 705 (2d Cir., decided May 14, 1971), where this Court, sitting *in banc*, held the § 174 presumption valid when applied to one kilogram or other large quantities of cocaine. We distinguished *Vasquez* as follows:

"The panel in *Vasquez* concluded that the language in *Turner* footnote 39 required an adversary hearing in the district court to resolve the issue of the rationality of the presumption. 429 F.2d at 618. Although we agree that such an adversary hearing might well elicit valuable statistical information, we do not interpret the Supreme Court's language to prevent appellate consideration of the issue upon facts adversarily presented to juries prior to *Turner* or to imply anything more than the 'hope' that, should the issue of the presumption's rationality be raised on appeal, a full record would be available on the issue. Indeed, *Turner* itself indicates that, where adequate information is available for the taking of judicial notice, an appellate court should use such information." 442 F.2d at 707.

We then went on to discuss the statistical evidence as to the relatively small amount

As discussed in note 2, *supra*, this provision has now been repealed; and under the new Act, Congress, eschewing the

presumption, has prohibited possession directly.

of cocaine obtainable from domestic sources in comparison to that illegally imported; and we concluded that as applied to one kilogram or other large quantities of cocaine, both the presumption of illegal importation and the presumption of defendant's knowledge of illegal importation are sufficiently rational to withstand all constitutional attacks.

The crucial question, then, is whether the 831 grams of cocaine, which was found in Smart's apartment and which formed the basis for his conviction on Count IV, was sufficiently large to come within the rationale of *Gonzalez*. We find that it clearly was. As stated in *Gonzalez*:

"'* * * we do not intend to limit our holding to quantities exceeding one kilogram. Obviously the reasoning behind our conclusion is exactly as applicable to large quantities of cocaine, although less than a kilogram, as the *Turner* reasoning is to small quantities of cocaine, although more than a gram. In cases already tried and not yet decided on appeal, we must, in line with the rationale of this opinion, decide each case on an individual basis. In doing so we must consider both the quantity of cocaine involved and the possibility of harmless error." 442 F. 2d at 709.

Utilizing these factors in the instant case, we note that 831 grams is much closer to the one kilogram set up as a guideline in *Gonzalez* than it is to the less than one gram involved in *Turner*. Moreover, as in *Gonzalez*, the evidence here, concededly demonstrative of illegal importation and knowledge as to Count II, also tended to show that the cocaine underlying Count IV was imported and that the defendants were the actual importers. When first introduced to Scrocca on December 4, 1968, Smart stated that in the past he had obtained cocaine from La Paz, Bolivia; he boasted that he could supply the agent with any amount of cocaine from Bolivia which he desired. After he and Scrocca had agreed to do business, he said that he would forward a coded message to his La Paz partner. Less than three weeks later, when he again met with the undercover agent, he indicated that the cocaine he had ordered would be delivered imminently, although the price would be $13,000 instead of the $12,000 originally quoted for an imported kilo. Within a few hours Smart and his associates were arrested in Smart's apartment in possession of 831 grams of cocaine.

Finally, although the jury should have been instructed that the § 174 presumption is limited to large quantities of cocaine, Judge Tyler could not have been expected to do so since the trial in this case predated both *Turner* and *Gonzalez*. The large amount of cocaine involved here, which the jury necessarily found to have been in Smart's possession,[4] and the strong circumstantial evidence of its importation and of the defendants' knowledge of that importation lead us to find in the instant case, as we did in *Gonzalez*, that the trial judge's failure to give these instructions was harmless error. See United States v. Gonzalez, *supra*, at page 709 n. 10.

Smart's other contentions have little substance and we treat them very briefly. He claims that he was prevented from obtaining a fair trial because the government neither revealed the identity of the informant who introduced him to Scrocca nor called the informant as a witness at trial. We reject this contention. The defendants never requested disclosure of the informant's identity nor did they ask the government to produce him, and hence the government was un-

---

4. In advancing his claim, Smart also argues that his mere presence in the apartment where the 831 grams of cocaine were found was insufficient evidence to establish his possession of that cocaine. This argument, construed as a challenge to the sufficiency of the evidence of pos-session to go to the jury, is without merit, since it was rebutted not only by the testimony of Scrocca, but also by the testimony of Smart's own witnesses, which established his control and dominion over the apartment in question.

der no obligation to produce such informant at trial or publicly to disclose his identity. See United States v. D'Angiolillo, 340 F.2d 453, 455 (2d Cir.), cert. denied, 380 U.S. 955, 85 S.Ct. 1090, 13 L.Ed.2d 972 (1965); United States v. Cimino & D'Ercole, 321 F.2d 509, 512 (2d Cir. 1963), cert. denied, sub nom., D'Ercole v. United States, 375 U.S. 967, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964).

■ Smart attacks his conviction under Counts I and II on the ground that 26 U.S.C. §§ 4705(a) and 7237(b) [5] constitute an impermissible federal invasion of police powers reserved to the states and thus violate the Tenth Amendment to the United States Constitution. We disagree. In Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1968), the Supreme Court upheld the constitutionality of the written-order-form provisions; and since Mr. Justice Douglas' dissent there raised the precise Tenth Amendment argument that Smart now makes, the majority of the Court must have seen and rejected it.

■ Smart also claims that certain remarks made by the Assistant United States Attorney in his summation constituted an unfair allusion to, or comment upon, the defendants' failure to testify, and thus deprived him of his right to a fair trial.[6] We disagree. The defendants failed to object to these remarks or to request a cautionary instruction and hence this contention is unavailable

on appeal unless it constituted plain error. Rule 52(b), Fed.R.Crim.Proc. The ambiguity of the remarks and the context in which they were made establish that these remarks did not "naturally and necessarily" rise to the level of comment upon Smart's failure to testify. See United States ex rel. D'Ambrosio v. Fay, 349 F.2d 957, 961 (2d Cir. 1965). Accordingly, the court's permitting of such remarks was not plain error.

■ Smart's next contention is that the absence of certain documents from the district court file in this case prejudiced the proper preparation and prosecution of his appeal and thus requires us to grant him a new trial. We disagree. The missing documents would appear to have no significance to the issues which could be advanced on appeal.[7] Those records necessary for prosecution of the appeal—the minutes of the trial and the minutes of the suppression hearing—are intact and were available to Smart and his appellate counsel. Smart has failed to show any prejudice to his right to appeal resulting from the missing documents. Cf. Rule 10(c), F.R. A.P.; United States v. DiCanio, 245 F.2d 713, 715 (2d Cir.), cert. denied, 355 U.S. 874, 78 S.Ct. 126, 2 L.Ed.2d 79 (1957).

We have examined Smart's remaining contentions and find them to be wholly without merit.

Affirmed.

---

5. These provisions are described in note 1, *supra*.

6. The Assistant United States Attorney's alleged unfair comment in summation was as follows:

"Now, ladies and gentlemen, the government submits that the proof against Jose Vasquez and Carlos Smart is overwhelming but the defendants must say something. What must they say? They seize upon the fact that there is something wrong with the door, the agents busted in, that is what he said, the agents busted in. There is no testimony, ladies and gentlemen, as you recall, there is no testimony that agents busted in. You will review this."

7. The missing documents are: a notice of appearance filed by one defense counsel; unspecified papers relating to defendants' motion to suppress; a substitution of attorney form; an affidavit opposing the motion to suppress; a notice of motion; an unidentified affidavit; an affidavit pertaining to the application for bail; papers opposing a motion for bail reduction; two court memoranda in denial of motions (evidently the motion to suppress and the motion to reduce bail); a Criminal Justice Act form; an application for a subpoena; an unidentified affidavit and notice of motion; orders remanding the defendants; the judgments of conviction; a court order permitting Smart to proceed *in forma pauperis*; a leave to appeal; and notice of appeal.