Normand Martin OUILLETTE, Petitioner-Appellant,

v.

UNITED STATES of America and the United States District Court for the District of Colorado, Respondents-Appellees.

No. 604-69.

United States Court of Appeals, Tenth Circuit.

Nov. 25, 1970.

Francis R. Salazar, Denver, Colo., for petitioner-appellant.

Leonard W. D. Campbell, Asst. U. S. Atty. (James L. Treece, U. S. Atty., on the brief), for respondents-appellees.

Before PHILLIPS, HILL and HICKEY,* Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

This is an appeal from an order denying a motion to vacate a judgment and

---

* Judge Hickey, because of his death on September 22, 1970, did not participate in this opinion.

sentence filed by Ouillette under 28 U.S. C. § 2255.

On November 22, 1968, Ouillette was charged by information filed in the United States District Court for the District of Colorado with unlawfully transferring marihuana, in violation of 26 U.S.C. § 4742(a). Thereafter, on December 11, 1968, a superseding information was filed, charging that Ouillette was a person who, as transferee, was required to pay the transfer tax imposed by 26 U.S.C. § 4741(a), and that he had acquired marihuana without having paid such tax, in violation of 26 U.S.C. § 4744(a) (1). On December 11, 1968, Ouillette entered a plea of guilty to the superseding information and was committed by the court, under the provisions of 18 U.S.C. § 5010(e), to the custody of the Attorney General for observation and study at an appropriate classification center or agency of the Youth Correction Division.

On January 17, 1967, Ouillette had pleaded guilty in the United States District Court for the District of Arizona to the unlawful transportation of a motor vehicle, in violation of 18 U.S.C. § 2312, and had been placed on probation under the Youth Corrections Act. Thereafter, on January 3, 1969, during the period of Ouillette's probation, the United States District Court for the District of Arizona, under 18 U.S.C. § 3653, transferred jurisdiction over Ouillette's probation to the United States District Court for the District of Colorado, and the latter court concurred in such transfer.

On March 7, 1969, the United States District Court for the District of Colorado sentenced Ouillette on a plea of guilty to the superseding information, charging a violation of 26 U.S.C. § 4744 (a) (1), to an indeterminate sentence under the Youth Corrections Act. On the same day, the United States District Court for the District of Colorado revoked Ouillette's probation without a hearing and sentenced him on the Dyer Act charge to an indeterminate sentence under the Youth Corrections Act, to run concurrently with the sentence on the marihuana charge.

Thereafter, on October 2, 1969, after a hearing on the matter of revoking Ouillette's probation in the Arizona court for a violation thereof, the United States District Court for the District of Colorado entered an order reinstating Ouillette's probation for a term of three years.

On November 6, 1969, Ouillette escaped from custody, but we are advised that he has been returned to custody, and the question of mootness raised by counsel for the United States is no longer pertinent.

On June 4, 1969, Ouillette filed a petition pro se for a writ of habeas corpus. On June 10, 1969, Bailey Belfor, a member of the Bar of Colorado and of the United States District Court for the District of Colorado, entered his appearance on behalf of Ouillette, and filed a motion for permission to file an amended motion to vacate the judgment and sentence imposed on Ouillette on the marihuana charge. The application was signed by Belfor as a member of the law firm of Francis R. Salazar. On June 20, 1969, Salazar filed an amended motion to vacate the judgment imposed on Ouillette.

On May 19, 1969, the United States Supreme Court handed down its decision in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, in which it held that a timely and proper assertion of the Fifth Amendment privilege against self-incrimination is a good defense to a prosecution of a transferee for a violation of § 4744(a) (2), because of the operation of transfer tax requirements of the Marihuana Tax Act.

Ouillette now contends that his plea of guilty to the information which charged him with the violation of § 4744(a) (1) was not voluntarily and understandingly entered, because at the time he entered such plea Leary had not been decided and he did not know that a timely and proper assertion of the Fifth Amendment privilege against self-incrimination would have been a complete defense to the charge in such information.

The Supreme Court, in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (decided January 29, 1968), held that a plea of the Fifth Amendment privilege against self-incrimination provided a complete defense to a charge of failing to register and pay the occupational tax on the business of accepting wagers, as required by 26 U.S.C. §§ 4411 and 4412.

In Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (decided January 29, 1968), the Supreme Court held that the Fifth Amendment privilege against self-incrimination provided a complete defense to a criminal charge of failure to pay the excise tax imposed on wagering by 26 U.S.C. § 4401, of failure to pay the occupational tax imposed by 26 U.S.C. § 4411 on the business of accepting wagers, and of conspiracy to defraud the United States by evading the payment of such taxes.

In Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (decided January 29, 1968), the Supreme Court held that the Fifth Amendment privilege against self-incrimination was a good defense to a charge of possession of unregistered weapons under the National Firearms Act, 26 U.S.C. § 5851.

The Supreme Court granted certiorari in Leary on June 10, 1968 (392 U.S. 903, 88 S.Ct. 2058, 20 L.Ed.2d 1362). It was thereafter, on December 11, 1968, that Ouillette entered his plea of guilty in the instant case. Such granting of certiorari and the three decisions last above referred to foreshadowed the decision in Leary.

On the other hand, the decisions in Marchetti, Grosso and Haynes were not so foreshadowed. In fact, the contrary was true. In United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (decided March 9, 1953) and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (decided March 14, 1955), the Supreme Court held that the Fifth Amendment privilege against self-incrimination was not a defense to a charge of wilful failure to register and pay the occupational tax while engaging in the business of accepting wagers.

Moreover, in Leary the court held that the defense of deprivation of the privilege against self-incrimination had to be timely and properly raised by the petitioner. Leary first raised the defense in a motion for a new trial. The Supreme Court said, "Although it would have been preferable for petitioner to have asserted the privilege at trial," it held that "in the circumstances" of the case, raising it in the motion for a new trial was timely and proper.

The penalty for a violation of § 4742 (a) is imprisonment for a period of not less than 5 nor more than 20 years, and a fine of not more than $20,000, or both a fine and imprisonment, and the court may not suspend the imposition or execution of a sentence for a violation of such section, nor place the defendant on probation. Imprisonment is mandatory for not less than 5 years.

The penalty for a violation of § 4744 (a) (1) is imprisonment for not less than 2 nor more than 10 years, and a fine of not more than $20,000, or both a fine and imprisonment, and the court may suspend the imposition or execution of the sentence and place the defendant on probation, and if he is eligible sentence the defendant under the Youth Corrections Act, as was done in the instant case.

Moreover, while deprivation of the privilege against self-incrimination is a defense to a transferee charged with a violation of § 4744(a) (1), it is not a defense to a transferor of marihuana charged with a violation of § 4742(a). See Minor v. United States and Buie v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (decided December 8, 1969).

At a hearing in the United States District Court for the District of Colorado on December 11, 1968, Milton C. Branch, Assistant United States Attorney for the District of Colorado, appeared for the United States, and Ouillette appeared in person and with his attorney, Eugene A. Frantz. Branch announced that there

was then an information on file in Case No. 68–CR–336, charging Ouillette with an unlawful transfer of marihuana, in violation of § 4742(a), and that the United States desired to file a "superseding information" charging Ouillette with a violation of § 4744(a) (1).

■ The Assistant United States Attorney and Ouillette had entered into an agreement whereby the Assistant United States Attorney agreed to file the superseding information and Ouillette agreed to plead guilty thereto. There was nothing improper in the Assistant United States Attorney and Ouillette entering into such an agreement. See Lattin v. Cox, 10 Cir., 355 F.2d 397.

It is obvious that Ouillette and his attorney in so agreeing were actuated by a desire to avoid the risk of conviction of the more serious offense of a transfer of marihuana, in violation of § 4742(a), and receiving not less than the very severe minimum sentence of imprisonment for 5 years, and that they were not concerned with the defense of deprivation of the privilege against self-incrimination or any other defense to the information charging Ouillette with a violation of § 4744(a) (1).

The facts which the Assistant United States Attorney stated at the hearing that the Government would be able to establish to prove a violation of § 4744 (a) (1) strongly indicated that the Government would also be able to prove a violation of § 4742(a). At the proceeding when sentence was imposed, and before its imposition, counsel for Ouillette stated he would make a statement in Ouillette's behalf, but that Ouillette desired to first make a statement. Ouillette then addressed the court and said, "May I make my statement?" The court replied, "Yes." Ouillette then proceeded with his statement, and in the course thereof stated he had engaged in selling "drugs" and undertook to explain why he had done so.

Hence, the agreement was indeed advantageous to Ouillette, and that was all the more true when it was later held by the Supreme Court in Minor v. United States and Buie v. United States, supra (decided December 8, 1969), that the requirements of the Marihuana Tax Act do not operate so as to deprive a person charged as a transferor of marihuana, in violation of 26 U.S.C. § 4742(a), of the Fifth Amendment privilege against self-incrimination. The court asked Ouillette if he had had a full opportunity to discuss the matter of waiving indictment with his counsel. Ouillette answered in the affirmative. The court then asked Ouillette if he fully understood that he had a constitutional right to have the matter submitted to a grand jury and be charged only by indictment. Ouillette answered in the affirmative. The court then advised Ouillette he could waive such right, but the court had to be satisfied it was his free and voluntary choice so to do. Ouillette answered, "It is, your Honor."

A waiver of indictment and consent to be charged by information was then presented to Ouillette, and the court instructed him to read it very carefully with his counsel, and if, after having done so, he wished to waive his right to be charged only by an indictment returned by a grand jury and consent to be charged by information, he should so indicate by signing the waiver. After consulting with his counsel, Ouillette signed the waiver.

The superseding information was then filed, and the court asked Ouillette's counsel if he had had an opportunity to study the information and go over it with Ouillette. Both Ouillette and his counsel stated each had read the information and was fully aware it charged Ouillette with acquiring a quantity of marihuana without paying the tax imposed by the Marihuana Tax Act on transferees.

The court then proceeded with the arraignment on the superseding information. Ouillette entered a plea of guilty. Before accepting it, the court advised Ouillette that by pleading guilty, he acknowledged the truth of the matters set forth in the information, and asked

Ouillette if he understood the effect of his plea. Ouillette answered, "Yes, your Honor." The court then stated to Ouillette that by pleading guilty he admitted that on October 16, 1968, he acquired a quantity of marihuana that he was required to pay a tax on, and that he did not pay such tax. Ouillette answered, "I had in my possession a quantity of marihuana that I had not paid tax on." The court then said, "You understand you have a constitutional right to have your case heard and determined by a jury of citizens?" Ouillette answered, "Yes, I understand," and that he did not wish to have a jury trial. The court then asked Ouillette if he had received any promise or inducement to plead guilty. Ouillette replied, "Well, you know, by putting in the different charge, I was to enter a guilty, your Honor," which merely affirmed the arrangement between Ouillette and his attorney and the Assistant United States Attorney. The court said, "In other words, what you undertook to do was to plead guilty to a lesser charge if the government would file it, is that right?" Ouillette answered, "Yes, your Honor."

The court then inquired of Ouillette if any promise or inducement had been made to him with respect to the sentence the court would impose. Ouillette answered, "No, your Honor." The court then said, "Or, has there been any indication that you will get leniency because of the plea of guilty?" Ouillette answered, "No, your Honor."

Ouillette was 20 years of age and had completed one semester of college. There can be no doubt that he fully understood the effect of his waiver of indictment, his consent to be charged by information, and the effect of his plea of guilty.

As above stated, Ouillette and his then counsel were not concerned with a defense of the charge against him as a transferee. What they wanted to avoid, and wisely so, because of the later deci-

sion in Minor and Buie, was a probable conviction and a severe mandatory sentence for a violation of § 4742(a).

If, when the decision in Leary came down on May 19, 1969, Ouillette and his counsel changed their minds and decided to endeavor to get the sentence vacated and leave granted to withdraw the plea of guilty, they could and should have filed a motion under Rule 32(d) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.,[1] which provides:

> "A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

They did not do so. Instead, Ouillette first undertook to obtain relief by a petition for habeas corpus, and then, with new counsel, by a motion filed under 28 U.S.C.A. § 2255 on June 20, 1969.

 We think that Ouillette and his attorney, Eugene A. Frantz, decided rather than to undertake to defend the charge of a violation of § 4742(a), the wise course would be to undertake to get the Government to file an information charging Ouillette with the violation of § 4744(a) (1) in return for an agreement that he would plead guilty to such charge, and that when such agreement was reached, they knowingly and intentionally waived any possible defense to the information charging a violation of § 4744(a) (1).[2]

The claim that Mr. Frantz did not competently represent Ouillette is clearly without merit. If present counsel should succeed in getting Ouillette's sentence vacated and his plea of guilty withdrawn, then the Government would very likely prosecute him on the information charging a violation of § 4742(a), which is a much more serious offense to which a plea of deprivation of the privilege

---

1. Kienlen v. United States, 10 Cir., 379 F.2d 20, 23.

2. See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (decided November 23, 1970).

against self-incrimination is not a defense, and for a conviction of which a mandatory penalty of not less than 5 years' imprisonment would have to be imposed. The more serious question, then, is whether present counsel is competently representing Ouillette.

In its oral pronouncement of Ouillette's sentence on March 7, 1969, the court stated in part:

"* * * It is a finding of the Court that the defendant is a youth offender as to both charges here—both the theft and the interstate transportation of the vehicle, * * * and the sale of LSD charge. * * *"

The reference to LSD was inadvertent and was corrected in the formal commitment, signed by the judge, which read:

"It is adjudged that the defendant has been convicted upon his plea of Guilty of the offense of Unlawful Possession of Marihuana, in violation of Title 26, U.S.Code, Section 4744(a) (1)."

■ We hold that the inadvertent misstatement in the oral pronouncement of the sentence did not render it invalid, in view of the correction in the commitment, which was signed by the judge.

Affirmed.