**Richard A. LAUCHLI, Jr., Petitioner-Appellant,**

**v.**

**UNITED STATES of America, Respondent-Appellee.**

**No. 72-1247.**

United States Court of Appeals, Seventh Circuit.

Heard April 9, 1973.

Decided July 6, 1973.

Richard A. Lauchli, Jr., Helen Lauchli, Collinsville, Ill., for petitioner-appellant.

Donald B. Mackay, U. S. Atty., Max E. Goodwin, Asst. U. S. Atty., Springfield, Ill., for respondent-appellee.

Before SWYGERT, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.

PER CURIAM.

This appeal stems from our prior opinion in Lauchli v. United States, 432 F.2d 1207 (7th Cir. 1970). There we remanded the cause so that the trial court could resolve certain questions arising from petitioner's conviction for violation of five Sections of the National Firearms Act of 1934.[1] The district court was required to determine the following three questions:

1. Whether importers, manufacturers and dealers in firearms are, as a class, almost exclusively individuals inherently suspect of criminal activities, so that Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889; Grosso v. United States, 390 U.S. 62,

88 S.Ct. 709, 19 L.Ed.2d 906; and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923, would require setting aside petitioner's convictions under 26 U.S.C. §§ 5801 and 5802.

2. Whether transferors of firearms are such a suspect class, thus similarly invalidating petitioner's convictions under 26 U.S.C. §§ 5811, 5813 and 5814.

3. Whether the principle of Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283, where the Supreme Court decided that the Fifth Amendment is not available as a defense to a charge of selling narcotic drugs and marijuana without the written order forms required by law, saves petitioner's conviction under 26 U.S.C. § 5814.

Determination of the first two questions was to be made "as a matter of fact." 432 F.2d at 1210.

Upon remand, the district court conducted evidentiary hearings on March 18 and 25, 1971. Petitioner was represented by appointed counsel. The district court confined evidence at the hearing to the three questions specifically referred, and in view of the evidence presented on these questions and their resolution, there was no occasion under our mandate to consider anything further.

At the hearing, Cecil Wolfe, an official of the Treasury Department, testified for the Government that there were licensed importers, manufacturers and dealers in firearms subject to the registration and occupational tax provisions of 26 U.S.C. §§ 5801 and 5802 in about 45 of the 50 states in 1964, when these offenses occurred. There were five classes of these special occupational tax-

---

I. 26 U.S.C. § 5801, which imposed a special tax on importers, manufacturers and dealers in firearms; 26 U.S.C. § 5802 which required such persons to register with the Treasury; 26 U.S.C. § 5811, which imposed a tax on each firearm transferred, which the transferor must pay by purchasing a stamp; 26 U.S.C. §

5813, which required the stamp be affixed to the requisite order form; and 26 U.S.C. § 5814, which made it unlawful to transfer a firearm except in pursuance of a written order from the transferee on a blank issued by the Treasury on application of the transferee.

payers under the regulations promulgated under the National Firearms Act of 1934. Petitioner fell in Class I, which covered importers and manufacturers of firearms not covered by the other classes. Wolfe testified that during fiscal year 1964 there were 18 Class I manufacturers and importers registered under the Act, including a number of familiar and legitimate businesses.[2] He said that the tax and registration provisions of the Act were designed to qualify legitimate business operations. He added that the lawfulness of a Class I business was not related to the size of the operation and that a person could register and pay the special tax as a manufacturer without becoming a member of an inherently suspect class.

As to transfers of firearms, Wolfe testified that as of 1964 there were over 100,000 firearms registered under the 1934 National Firearms Act (excluding those owned by the military and the Federal Government), each of which was subject to its transfer provisions. He estimated that between 5,000 and 10,000 firearms were actually transferred under the procedures of the Act in 1964, the pertinent year, including transfers by collectors, law enforcement agencies, individual peace officers, licensees and special occupational taxpayers and excluding transfers to the military and exports.

Wolfe stated that the form used to record a transfer of a firearm in 1964 was a Form 4. The transferee was required to obtain the form, fill in certain information about himself and present it to the transferor in duplicate. The transferor would then complete the form, attach and cancel a tax stamp, and forward the form to the Director, Alcohol and Tobacco Tax Division. According to Wolfe, the form could be obtained from an Internal Revenue Service or Alcohol, Tobacco Tax office, and the transfer tax stamps could be purchased by anyone from an Internal Revenue Service district director's office without giving any information.

Anthony Scherer, Jr., a former Class IV firearms dealer, was called as a witness for petitioner. In his opinion, formed partly on the basis of his own experience and partly on "stories heard from other dealers," persons engaged in the firearms business with less than $100,000 per annum volume are generally regarded as persons inherently suspect of criminal activities. Although not a manufacturer, he related hearsay information that some firearms manufacturers had been harassed by the Government. He also alleged he was personally harassed. Petitioner's request to subpoena two former police officials similarly to testify to the effect that in their opinion persons engaged in the sale of certain firearms subject to the National Firearms Act whose gross business was less than $100,000 per year would be inherently suspect of criminal activity was denied. However, the district judge allowed an offer of proof and clearly considered its purport in making his decision, saying he would "take it with the case."

Petitioner then testified in his own behalf. He stated that his experience in the firearms business convinced him that all persons and corporations engaged in that business, regardless of volume, were inherently suspect.[3] he conjectured that he might have been required to identify himself if he had purchased tax stamps in 1964. He admitted that tax stamps and the forms used un-

2. During the same fiscal year five Class II manufacturers and importers registered, sixty Class IV dealers registered and paid special occupational taxes, and ninety-four Class V dealers registered and paid the taxes.

3. Petitioner asserted that, among others, the Goodyear Tire and Rubber Co., the Browning Arms Co., the Colt Co., the Olin Mathieson Co., the Mars Co., the Harrington and Richardson Co., the Cadillac Gauge Co., the International Armament Corp.—all special occupational taxpayers—were actually suspected of criminal activity.

der the 1934 Act could be obtained by anyone.

In its unreported opinion upholding petitioner's conviction under the 1934 Act, the district court found that since a number of Class I legitimate manufacturers registered and paid this tax in 1964, their existence "conclusively refutes the contention that Sections 5801 and 5802 [of the National Firearms Act] were directed almost exclusively to individuals inherently suspect of criminal activities."

The court also held that small manufacturers like petitioner were not inherently suspect because the legality of the manufacture of firearms covered by the Act under both federal and state law is not dependent upon size and that petitioner would not have become inherently suspect of violating Illinois law by complying with Sections 5801 and 5802 of the National Firearms Act. Therefore, the convictions under Counts I and II were sustained.

The court also upheld the convictions under Counts VI, VII, VIII, IX, X and XI involving illegal transfer offenses under Sections 5811, 5813 and 5814 because "transferors" under the same statute did not constitute a class almost exclusively of individuals inherently suspect of criminal activities. The court was influenced by Mr. Wolfe's testimony (summarized *supra*) that there are legitimate transfers of firearms "inasmuch as many transfers have occurred within a legitimate and proper manner as set out by the regulations of the National Firearms Act." The court refused to credit the contrary testimony of Mr. Scherer and petitioner since "the evidence did not clearly establish the basis for these alleged suspicions" and since it was not shown that either one had become suspect by virtue of being a "transferor" under the Act.

As to 26 U.S.C. §§ 5813 and 5814 involved in Counts VII, VIII, X and XI, the Court denied petitioner's self-incrimination claim upon analysis of Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283, and of the possible

incriminatory impact of compliance with the particular obligations contained in the above Sections.

Accordingly, the district court ruled that all counts of petitioner's conviction under the National Firearms Act must stand. We affirm.

I

■ The evidence credited by the district judge established that manufacturers of firearms under the 1934 Act are not almost exclusively individuals inherently suspect of criminal activities. Therefore, under the interpretation of this Court in the previous appeal, the rationale of *Marchetti, Grosso* and *Haynes, supra,* is inapplicable to petitioner's failure to register as a firearms manufacturer and pay the occupational tax, as required by Sections 5801 and 5802. Since these provisions were clearly directed at law-abiding persons as well as criminally suspect persons, no automatic hazard of self-incrimination under the Fifth Amendment was presented.

The situation here under Sections 5801 and 5802 is a far cry from that in *Haynes*, which involved possession of an unregistered firearm under Section 5851. That Section made it an offense to possess a firearm which was acquired in violation of the making or transfer provisions or which was not registered as required by Section 5841. Section 5851 was construed to incorporate the requirements of Section 5841 so as to declare unlawful the possession of any firearm which had not been registered by its possessor in circumstances in which Section 5841 imposed an obligation to register. 390 U.S. at 94, 88 S.Ct. 722. That obligation to register was imposed on all possessors except those who acquired the firearm by transfer or importation or who made it if the National Firearms Act provisions relating to such transfer, importation or making were complied with. Thus the Supreme Court found the registration requirement to be directed principally at those persons who obtained possession without

complying with the Act's other requirements. *Id.* at 96, 88 S.Ct. 722. Indeed almost invariably the only possessors required to register would have been those who violated the Act's other provisions, the only cited exception being the finder of a lost or abandoned firearm. *Id.* at 96–97 and n. 10, 88 S.Ct. 722. In contrast, the tax and registration requirements of Sections 5801 and 5802 for manufacturers, importers, and dealers do not almost invariably ensnare only those who have violated other requirements of the Act, and we see no correlation between satisfaction of these requirements and any subsequent violation of the Act which would lead us to conclude that the requirements are almost exclusively directed at an inherently suspect class. See Marchetti v. United States, 390 U.S. 39, 53–54, 88 S.Ct. 697, 19 L.Ed.2d 889. The number of legitimate occupational taxpayers subject to and in compliance with these requirements is persuasive evidence to the contrary.

Petitioner argues that as an Illinois manufacturer of firearms he would necessarily be inherently suspect because of an Illinois statute[4] regulating weapons and because the identity of manufacturers registered under the National Firearms Act was available to Illinois officials in 1964. However, the weapons regulated by the federal and state statutes differed.[5] Since Class I manufacturers under the former did not necessarily manufacture weapons regulated

by Illinois law, the federal obligations cannot be deemed "directed almost exclusively to individuals inherently suspect of criminal activities." Lauchli v. United States, *supra* at 1209 of 432 F.2d. Also, the Class I manufacturer was not "inherently suspect" in view of the various exemptions for certain uses provided by the Illinois statute.[6] Since a Class I manufacturer could be in compliance with Illinois law according to the type of weapon manufactured and its intended use, it cannot be said that he was confronted by a comprehensive system of federal and state prohibitions against firearms in the same way as in *Marchetti, supra* at 42–48 of 390 U.S., 88 S.Ct. 697. Thus whether or not petitioner was violating Illinois law, he would not be inherently suspect of such violation by complying with the National Firearms Act.

## II

As to the transfer offenses under Sections 5811, 5813 and 5814 (see note 1 *supra*), the evidence credited by the district judge established that "transferors" subject to the Act[7] were not an "inherently suspect" class. Even petitioner's expert witness acknowledged the legitimate nature of many transfers. Neither he nor petitioner showed that either was criminally suspect as a "transferor."

Even if "transferors" under the 1934 Act were criminally suspect, petitioner's compliance with Sections 5811, 5813 and

---

4. Ill.Rev.Stat. Ch. 38, § 24–1 et seq.

5. Only some weapons covered by the National Firearms Act were regulated by the Illinois statute. Compare 26 U.S.C. § 5848(1)–(5) with Ill.Rev.Stat. Ch. 38, § 24–1(a)(7). For example, whereas the Illinois statute applied to "any weapon from which more than 8 shots or bullets may be discharged by a single function of the firing device," the National Firearms Act covered "any weapon which shoots or is designed to shoot, automatically or semi-automatically, more than one shot * * * by a single function of the trigger"; whereas the Illinois Act covered "any shotgun with a barrel less than 18 inches in length," the National

Firearms Act covered in addition any "rifle having a barrel or barrels of less than 16 inches in length, or any weapon made from a rifle or shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than 26 inches, or any other weapon, except a pistol or revolver, from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person."

6. Ill.Rev.Stat. Ch. 38, § 24–2(c).

7. "Transferors" comprised a much broader class than "manufacturers" subject to the 1934 Act. See 26 U.S.C. §§ 5801(a)(1), 5812 and 5848(10).

5814, or at least part thereof, would not present a real and substantial hazard of incrimination as in *Marchetti, Grosso* and *Haynes*. Again the district court chose to believe Mr. Wolfe's testimony that the tax stamps in payment of the $200 transfer tax were sold "like a postal stamp," with no information demanded of the buyer. As he said, "the only thing required to get one is to go down [to any district director's office] and pay the money and tell them what you want." Since no real and substantial hazard of incrimination was involved, the Fifth Amendment provides no defense to petitioner's conviction for violating Section 5811 by failing to pay the transfer tax.[8]

As to petitioner's failure to obtain a written order form from the transferee as required by Section 5814, the applicable Form 4 [9] was issued in blank to anyone requesting it. The transferee would then complete part of the form and include his fingerprints and the certificate of a law enforcement officer that the transferee would apparently use the firearm lawfully. He was not required to furnish the identity of the transferor. The latter, in turn, could not transfer the firearm without obtaining the form from the transferee and sending it to the Director of the Alcohol and Tobacco Tax Division of the Treasury Department for prior approval.

If there was no substantial possibility that would-be transferees would present him with a Form 4 on demand, then, as in Minor v. United States, *supra*, and Buie v. United States, *Id.*, petitioner simply could not sell and would be confronted only with imaginary and insubstantial hazards of incrimination rather than the real and appreciable risks that would support a Fifth Amendment defense. However, as the Government concedes and the district court found, unlike the situation in *Minor* and *Buie*, obtaining the transfer form from a prospective purchaser "does seem to be a realistic possibility, because unlike the buyers under the marijuana and narcotics laws, a prospective firearms transferee could easily obtain blank forms without cost and, if his purpose were legitimate, would have no fear of completing his part of the application * * * and seems to have * * * no particular responsibility for determining [the seller's] legitimacy * * * ." Thus petitioner's self-incrimination claim is not defeated on the ground that the possibility of a buyer with transfer form in hand is purely hypothetical. Nevertheless, the claim must fail for another reason. The self-incriminatory element in 26 U.S.C. § 5814 could only exist in forwarding the order form to the Treasury Department, whereupon the seller might be admitting his violations of other sections of the National Firearms Act.[10] But even if petitioner's subsequent forwarding of the order form to the Treasury Department could be resisted on self-incrimination grounds, petitioner would have no self-incrimination basis to excuse his failure to obtain a partially completed Form 4 from a transferee before effecting the transfer, as required by § 5814(a). See Buie v. United States, 396 U.S. 87 at 91 n. 3, 90 S. Ct. 284, 24 L.Ed.2d 283.

With respect to petitioner's failure to affix the tax stamps to the order forms, as required by Section 5813, no incrimination could result in merely affixing a transfer stamp to a Form 4. This follows inevitably if the provisions requir-

---

8. We respectfully disagree with the contrary brief, *per curiam* opinion of the Eighth Circuit in Lauchli v. United States, 402 F.2d 455 (1968), where the court did not explain the basis for its assertion that payment of the transfer tax under Section 5811 requires self-incriminatory conduct.

9. See 26 C.F.R. § 179.98 in effect in 1964.

10. The transfer provisions would not involve Lauchli in an appreciable risk of incrimination under Illinois law because the National Firearms Act did not make transfer information available to state officials. See Haynes v. United States, *supra* at 99–100 of 390 U.S., 88 S.Ct. 722.

ing payment of the transfer tax by purchase of the stamps and the obtaining of an order form are valid, as we have found.

Affirmed.