[No. C050103. Third Dist. Jan. 8, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD E. WILMSHURST, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[†]]**

---

[†]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts IV., V., VI., VII. and VIII. of the Discussion.

## COUNSEL

Thomas M. Marovich for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, J. Robert Gibson and Janine R. Busch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DAVIS, Acting P. J.**—A jury convicted defendant Richard E. Wilmshurst of unlawfully possessing a machine gun and illegal assault weapons. Finding this to be an unusual case, the trial court suspended imposition of sentence and placed him on probation.

On appeal, defendant contends that the search warrant used to seize firearms from him, and the use of statements he made during the search, violated his privilege against self-incrimination. He also contends that the warrant was overbroad; that federal law preempts the state firearms control laws; that he was denied a fair hearing; and that the jury was improperly instructed.

In the published part of the opinion we hold that including in the search warrant affidavit information defendant's federal firearms license required him to keep, and information from an inspection he was required to submit to, did not violate his privilege against self-incrimination. Nor do we find that federal law preempts Penal Code sections 12220, subdivision (a) and 12280, subdivision (b), which respectively proscribe possession of machine guns and certain assault weapons. Finding no merit to defendant's remaining contentions, we will affirm the judgment.

Because defendant does not dispute his ownership of these weapons that are unlawful to possess under state law, we will not provide a separate summary of facts. Instead, we will include the facts relevant to his contentions in the discussion.

## DISCUSSION

### I. *Procedural and Factual Background*

#### A

During the course of his preliminary hearing, defendant moved to suppress evidence (Pen. Code, § 1538.5),[1] asserting the invalidity of the search warrant on several grounds. The magistrate denied the motion and held defendant to answer.

In the superior court, defendant requested a special hearing to renew his motion to suppress (§ 1538.5, subd. (i)), and sought to introduce additional evidence. The prosecution objected to the receipt of additional evidence. The

---

[1] Further undesignated section references are to the Penal Code.

trial court held a hearing in camera on the issue of whether this evidence had been reasonably available to defendant at the time of the preliminary hearing. (*Ibid.*)

At the hearing in camera, defendant asserted that until the preliminary hearing, he was unaware that two of the agents who were present at the execution of the warrant had engaged in conduct relevant to his arguments about the overbreadth of the search. The court had its doubts whether the information concerning the extent of the agents' conduct was truly unavailable at the time of the preliminary hearing, but it also stated that it did not believe the conduct of these two agents was relevant to any theory of overbreadth. As a result, it denied the motion to introduce additional evidence.

Following the hearing in camera, the court prepared to set the matter for trial. The prosecutor reminded the court that it needed to rule on the renewed motion to suppress, limited to the record at the preliminary hearing.[2] The court then stated, "It's denied," before returning to the matter of setting a trial date. Neither defense counsel nor defendant (who had been granted cocounsel status) raised any objection to the manner in which the court disposed of the motion before the parties adjourned for the day shortly thereafter.

## B

As the superior court decided the renewed motion to suppress on the record of the preliminary hearing, we disregard its ruling and review the issue independently, resolving express or implied factual conflicts in favor of the magistrate's ruling. (*People v. Nonnette* (1990) 221 Cal.App.3d 659, 664 [271 Cal.Rptr. 329].)

A federal firearms official went to defendant's home to perform a compliance inspection in connection with defendant's federal license for importing weapons. Her supervisor had assigned her the case after determining that defendant was not on a state list of authorized firearm dealers, which he obtained from time to time for purposes of cross-checking federal licensees. This triggered an interest in determining whether defendant was conducting any operations that would require compliance with state law. In the course of her review of his records and about 21 firearms, she found several that came within California's ban against assault weapons (although they were proper under federal law). When she questioned him about them, he invoked "the Supremacy Clause." (U.S. Const., art. VI, § 2 ["the laws of the United

---

[2] This included transcripts from a preliminary hearing in an earlier proceeding (Super. Ct. Calaveras County, No. F2909) that had been dismissed pursuant to section 995.

States . . . shall be the supreme law of the land; . . . any thing in the . . . laws of any state to the contrary notwithstanding"].) Pursuant to a policy of her department, she reported her observations of possible violations of state law to California firearms officials, even though there had not been any request from them for this information. She also notified the local officials of Angels Camp that defendant might be operating a business without a business license.

The California authorities determined that defendant was not a registered firearms dealer under California law, nor had he taken advantage of a "grandfathering" registration program for otherwise-illegal assault weapons possessed before the state ban went into effect. On this basis, they obtained a search warrant for defendant's car dealership and the outbuilding at his residence. On the first floor of the outbuilding were a storage area and his living quarters with a bedroom. Under the bed and in a wooden footlocker were a machine gun and two assault rifles; seven other illegal assault weapons were in the storage area. These were the weapons that were the basis for the charges against defendant. The agents also seized every other firearm they encountered, some of which were lawfully possessed.

## II. *Fifth Amendment Claim Regarding Records and Inspection*

Defendant contends that including in the affidavit for the search warrant information from records his federal firearms license required him to keep, and from an inspection he was required to submit to under federal firearm laws, was a violation of his privilege against self-incrimination. He relies on *Haynes v. United States* (1968) 390 U.S. 85 [19 L.Ed.2d 923, 88 S.Ct. 722] (*Haynes*); *Lauchli v. United States* (7th Cir. 1973) 481 F.2d 408 (*Lauchli II*); and *Lauchli v. United States* (7th Cir. 1970) 432 F.2d 1207 (*Lauchli I*) (judg. vacated and cause remanded (1971) 402 U.S. 938 [29 L.Ed.2d 106, 91 S.Ct. 1623], opn. following remand *Lauchli II, supra*, 481 F.2d 408). Defendant is mistaken.

"[T]here is some possibility of prosecution—often a very real one—for criminal offenses disclosed by or deriving from the information that the law compels a person to supply. . . . But under our holdings[,] the mere possibility of incrimination is insufficient to defeat the strong policies in favor of a disclosure called for by statutes like the one challenged here [that requires those involved in an accident to provide a name and address]." (*California v. Byers* (1971) 402 U.S. 424, 428 [29 L.Ed.2d 9, 91 S.Ct. 1535].) As summarized in *Byers*, the cases in which the United States Supreme Court

has found the privilege against self-incrimination to bar prosecution[3] involve statutes targeting a " 'highly selective group' " that is " 'inherently suspect of criminal activities,' " and the focus of the required disclosure is subject matter " 'permeated with criminal statutes' " rather than " 'an essentially noncriminal and regulatory area of inquiry.' " (*Id.* at p. 430.) As neither driving nor involvement in an accident are unlawful, the required disclosures did not pose a substantial risk of self-incrimination. (*Id.* at p. 431; accord, *Shapiro v. United States* (1948) 335 U.S. 1, 3–5, 32–33 [92 L.Ed. 1787, 68 S.Ct. 1375] [proper to prosecute violation of price controls based on sales records that the defendant required to keep under law; any privilege in private papers against self-incrimination does not apply to "public" records kept as required by law for the purpose of collecting information on transactions that are proper subject of government regulation]; *United States v. Sullivan* (1927) 274 U.S. 259, 263 [71 L.Ed. 1037, 47 S.Ct. 607] [no privilege involved in fulfilling generally aimed obligation to provide information in a tax return].)

*Haynes* involved a requirement for "persons who have obtained possession of a firearm without complying with the Act's other requirements" (*Haynes, supra,* 390 U.S. at p. 96) to register the firearm with the Secretary of the Treasury (pursuant to a scheme for the taxation of "weapons used principally by persons engaged in unlawful activities" (*id.* at pp. 87, 88)),[4] or face criminal prosecution. (*Haynes,* at p. 89.) As this registration obligation is aimed at persons "immediately threatened by criminal prosecutions" should they comply (*id.* at p. 96), such that the correlation between registration and a prosecution for the underlying possession could be regarded only "as exceedingly high" (*id.* at p. 97), the statutory scheme did not come within the exception to the privilege against self-incrimination for regulatory programs of general application (*id.* at pp. 98–99); therefore, that privilege provided "a full defense" (*id.* at p. 100).[5]

---

[3] *Marchetti v. United States* (1968) 390 U.S. 39 [19 L.Ed.2d 889, 88 S.Ct. 697] (gambling tax and registration requirements); *Grosso v. United States* (1968) 390 U.S. 62 [19 L.Ed.2d 906, 88 S.Ct. 709, 1968-1 C.B. 496] (same); *Albertson v. Subversive Activities Control Bd.* (1965) 382 U.S. 70 [15 L.Ed.2d 165, 86 S.Ct. 194] (registration as member of Communist organization).

[4] The act at issue was chapter 53 of title 26 United States Code, popularly called the National Firearms Act. (See 26 U.S.C. § 5849.)

[5] After subsequent amendment, the National Firearms Act required only *lawful* possessors of the targeted weapons to register and to record any transfer to another party; it prohibited, however, the transferee from registering the weapon, and made it unlawful to possess an unregistered weapon. (*United States v. Freed* (1971) 401 U.S. 601, 603–604, 605 [28 L.Ed.2d 356, 91 S.Ct. 1112].) The revised statute prohibited the use of any information collected for criminal proceedings involving a violation of federal or state law that occurred before or concurrent with registration or transfer. (*Id.* at pp. 604, 605–606.) This eliminated any concerns about compelled self-incrimination. (*Id.* at p. 606.)

Applying these precedents, *United States v. Resnick* (5th Cir. 1974) 488 F.2d 1165 concluded that "the record-keeping provisions of the federal firearms laws" (in this case, the Gun Control Act of 1968 (18 U.S.C. § 921 et seq.)) were *not* "directed at a highly selective group inherently suspect of criminal acts" but instead "regulate[d] an essentially noncriminal activity, the sale of firearms" and therefore did not transgress the privilege against self-incrimination. (*Id.* at p. 1168; accord, *United States v. Flores* (9th Cir. 1985) 753 F.2d 1499, 1501–1503 (*Flores*) [a provision requiring notice to carrier before shipping firearms does not violate privilege against self-incrimination]; *United States v. Scherer* (7th Cir. 1975) 523 F.2d 371, 375–376 [record obligations do not automatically subject licensees to criminal penalties; thus records are public documents not subject to privilege].)

*Lauchli I*, involving requirements in the National Firearms Act other than registration, stated that determining whether the petitioner came within the holding of *Haynes* is "in a sense" a question of fact, and accordingly remanded to the trial court to resolve the question. (*Lauchli I, supra*, 432 F.2d at pp. 1210–1211.) *Lauchli II* accepted the trial court's factual findings that manufacturers are not "almost exclusively individuals inherently suspect of criminal activities"; since the provisions at issue were directed both "at law-abiding persons as well as criminally suspect persons," no risk was presented of automatic self-incrimination. (*Lauchli II, supra*, 481 F.2d at p. 411.) *Lauchli II* also did not accept a claim that compliance with federal law would make the petitioner subject to prosecution under state law because the federal registry would be available to state officials: "a Class I manufacturer [under the federal law] could be in compliance with Illinois law according to the type of weapon manufactured . . . . Thus whether or not petitioner was violating Illinois law, he would not be inherently suspect of such violation by complying with the [federal act]." (*Id.* at p. 412.)

Defendant claims that the facts show an effort on the part of federal firearm agents to uncover violations of state firearms law when they inspect the firearms records required under federal law. He therefore contends that he is targeted for prosecution within the meaning of *Haynes*. He also contends there must be an evidentiary hearing on the extent to which those holding federal firearm importing licenses are at risk of prosecution under state law, citing *Lauchli I*.

To the contrary, the Gun Control Act of 1968 (Pub.L. No. 90-618, 82 Stat. 1213) compels the keeping of records of transactions that are the legitimate (if disputed) subject of regulation, a requirement that applies generally without inherently subjecting any particular group to the risk of prosecution. As *Lauchli II* points out in connection with the National Firearms Act, nothing prevents persons subject to the records requirements under federal

law from complying with state law, and thus they also could not be considered as targets of prosecution under state law. Since the federal law does not itself target recalcitrant state residents such as defendant who choose to violate state law, it is irrelevant that federal officials use the records to determine if anyone in the general population of federal license holders are in possible violation of state law and report these potential transgressors to state firearm authorities.[6] (*Lauchli II, supra*, 481 F.2d at p. 412; cf. *Flores, supra*, 753 F.2d at pp. 1501–1502 [while subject matter of firearms is permeated with criminal statutes, notice requirement does not implicate activity illegal per se and is aimed at public at large, considerations which outweigh possibility that recipients of notice might report illegal shipments to authorities].)

■ We also disagree with defendant's contention that these conclusions must be based on empirical evidence rather than abstract analysis. We do not believe *Lauchli I* compels such a conclusion, other than as an option that particular court chose to exercise in resolving the issue of the interplay of the statutes before it. Moreover, a decision of a lower federal court does not have any binding force as precedent (*People v. Bradford* (1997) 15 Cal.4th 1229, 1292 [65 Cal.Rptr.2d 145, 939 P.2d 259]), and we are not persuaded that an evidentiary hearing is a necessary procedure. (See *Flores, supra*, 753 F.2d at p. 1500 [whether notice requirement conflicts with privilege against self-incrimination is a question of law reviewed de novo].)

■ We conclude the search warrant properly incorporated facts derived from the firearms records defendant was compelled to keep under federal law. As a result, the trial court properly denied this ground of his renewed motion to suppress.

### III. *Federal Preemption*

In conjunction with his renewed motion to suppress, defendant also moved in superior court to dismiss one of the charges on the ground of federal preemption and a violation of the foreign commerce clause (U.S. Const., art., I, § 8, cl. 3). The court denied the motion. The defendant contends this was error.

### A

■ The Gun Control Act of 1968 expressly eschews any intent to preempt state regulation of firearms except in the case of a direct and

---

[6] This would be the same circumstance as cooperative efforts between the Internal Revenue Service (IRS) and the Franchise Tax Board (FTB) to determine tax evasion from a comparison of state and federal tax returns. (E.g., Rev. & Tax. Code, § 19551 [allowing FTB to release tax information to IRS].)

irreconcilable conflict (18 U.S.C. § 927), it being the intent of Congress only to strengthen control over interstate and foreign commerce in firearms and to assist intrastate control over them. (See *Fresno Rifle and Pistol Club, Inc. v. Van De Kamp* (9th Cir. 1992) 965 F.2d 723, 726, fn. 4.) Regulations implementing the act expressly state that a license issued pursuant to it does not confer any right to conduct business or activity contrary to state law.[7] (27 C.F.R. § 478.58 (2006).) Defendant consequently reaches for a more attenuated basis for his preemption claim.

■ The President of the United States is authorized to maintain a list regulating the import of designated arms, ammunition, and implements of war. (22 U.S.C. § 2778.) This list (the "U.S. Munitions Import List") and regulations relating to it appear in part 447 of the Code of Federal Regulations (27 C.F.R. § 447.21 (2006).) The regulations provide that any items on the list which are firearms or ammunition within the meaning of the Gun Control Act of 1968 are subject to the controls on interstate and foreign commerce contained in that act and any person who imports such items must be licensed pursuant to that act. (27 C.F.R. § 447.2(a) (2006).)

Defendant perceives an implied declaration of an intent to occupy the field regulating items on the list, because the regulations relating to the list do not include any equivalent express declaration that they are *not* intended to preempt state regulation. We find the reference to the need to comply with the controls on commerce in the Gun Control Act of 1968 to be sufficient indicia of congressional intent not to preempt state regulation over items on the U.S. Munitions Import List if they are of a type ordinarily coming within the former act. This would be a rational means of avoiding a duplication of regulatory effort. Defendant does not otherwise provide any authority indicating a presidential concern with state encroachment on the power to regulate items on the U.S. Munitions Import List after import. We therefore conclude that prohibiting a resident from owning types of firearms that can otherwise be lawfully imported does not transgress federal authority, which instead condones stricter local controls.

**B**

■ Defendant's alternative argument is that a state ban on types of legally imported firearms constitutes an impermissible burden on foreign commerce. He cites a case that invalidated a California *tax* on instrumentalities used in foreign commerce that would have prevented the federal government from maintaining uniformity in treatment of international trade. (*Japan*

---

[7] Defendant's license includes this caveat, stating it "does not permit you to receive . . . firearms . . . without first obtaining the proper state . . . license, if any. Please check with your local authorities."

*Line, Ltd. v. County of Los Angeles* (1979) 441 U.S. 434, 453–454 [60 L.Ed.2d 336, 99 S.Ct. 1813].) However, he does not even begin to explain how the principles limiting *taxation* of foreign commerce apply to the present facts. In light of the inadequate argument, we disregard the claim. ▉ (*People v. Oates* (2004) 32 Cal.4th 1048, 1068, fn. 10 [12 Cal.Rptr.3d 325, 88 P.3d 56].) In any event, where Congress has struck an express balance in its regulation of the interests involved in interstate or foreign commerce, a court no longer has any role in identifying possible burdens. (*Merrion v. Jicarilla Apache Tribe* (1982) 455 U.S. 130, 154–155 [71 L.Ed.2d 21, 102 S.Ct. 894]; *Japan Line, supra,* 441 U.S. at p. 454 [noting, in context of foreign commerce, that courts must balance competing interests in *absence* of any expression of congressional intent].) As with the issue of preemption, the regulations implementing the U.S. Munitions Import List indicate clear congressional intent to allow any items that would come within the Gun Control Act of 1968 to be subject to the same commerce principles that allow individual states to regulate them after import. Presumably, once the list establishes the necessary uniform voice in the treatment of munitions from around the world (*Japan Line, supra,* 441 U.S. at p. 448), it is not of any federal concern that a state declines to be a final destination for them.

## C

On several occasions, defendant moved to dismiss the charges against him on the basis of the federal statutory use immunity added to the National Firearms Act. He reasserts this proposition on appeal.

▉ The National Firearms Act (26 U.S.C. § 5801 et seq.) taxes and regulates (with various registration and other requirements) the import, manufacture, making, and transfer of machine guns, destructive devices, and certain other firearms. (See 26 U.S.C. § 5845.) The chapter contains a statutory use immunity from criminal prosecution for information obtained "in order to comply with any provision *of this chapter* [i.e., 26 U.S.C. §§ 5801–5872]" (26 U.S.C. § 5848, italics added). By contrast, the duty on defendant to maintain records and to permit warrantless inspections of them stems from the Gun Control Act of 1968. (18 U.S.C. § 923(g)(1)(B)(ii).) The use immunity provision of the National Firearms Act has no application in this context, and defendant does not provide any authority for importing its provisions into an entirely different act. The contention is consequently without merit.

IV.–VIII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 621.

## DISPOSITION

The People's motion for judicial notice is denied. The judgment is affirmed.

Hull, J., and Robie, J., concurred.

A petition for a rehearing was denied February 6, 2007, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 18, 2007, S150379. George, C. J., did not participate therein.