The Honorable Dennis McKinney State Representative, 116th District 1220 South Main Greensburg, Kansas 67054
Dear Representative McKinney:
You request our opinion on whether the prohibitions in K.S.A. 2006 Supp. 21-4201(a)(6) and (7) regarding firearm silencers and automatic firearms apply to a person who possesses the appropriate federal license required for dealing in automatic firearms and silencers under the Gun Control Act of 1968, 18 U.S.C. § 921 et seq.
The necessity for federal regulation of firearms traffic "arose from the failure of some states to enact effective gun control laws."[1]
When it enacted the Gun Control Act of 1968, Congress determined the prevalence of violent crime in the United States was due to the ease with which firearms could be obtained by "those whose possession thereof was contrary to the public interest."[2] The principal purpose of the Act "was to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency."[3]
Toward that purpose, the commerce of firearms is now channeled through persons who are federally licensed.[4] Only a federally licensed firearms dealer can engage in the business of selling firearms.[5]
However, this does not mean that such dealers can ignore state laws regulating automatic firearms and silencers.[6]
Automatic Firearms Federal Law
The Gun Control Act defines a firearm[7] and a semiautomatic rifle[8] but does not define an automatic firearm. Rather, the Act defines a "machinegun" as a "weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger,"[9]i.e., an automatic firearm. For purposes of this opinion, we treat a "machinegun" as the legal equivalent of an automatic firearm in K.S.A. 2006 Supp. 21-4201(a)(7).[10]
The Act prohibits a federally licensed firearms dealer from selling or delivering a machinegun to any person.[11] However, it exempts sales and deliveries to persons authorized by the United States Attorney General for public safety and necessity;[12] other federally licensed firearms dealers, importers, manufacturers, or collectors; and research organizations designated by the United States Attorney General.[13]
The Gun Control Act also prohibits "any person" from transferring or possessing a machinegun.[14] This prohibition, however, does not apply to "a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof."[15] Given the broad definition of "person,"[16] we believe this phrase includes a properly federally licensed firearms dealer. The word "transfer" is not defined in the Gun Control Act. However, the United States Supreme Court adopted the definition found in the National Firearms Act.[17] That Act defines "transfer" as "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of."[18]
Based upon the above provisions, it appears that the Gun Control Act authorizes a federally licensed firearms dealer to sell automatic firearms to: (1) persons authorized by the United States Attorney General; (2) other federal firearms licensees; (3) research organizations designated by the United States Attorney General; and (4) government entities.
 Kansas Law
K.S.A. 2006 Supp. 21-4201(a)(7) makes it unlawful to knowingly sell or possess a "firearm designed to discharge or capable of discharging automatically more than once by a single function of the trigger." Although no express exemption for a federally licensed firearms dealer exists, the Kansas statute, as discussed below, has three exceptions to the prohibition against possessing and selling automatic firearms.
The first exception applies to the transportation or "sale of" an automatic firearm "to a person authorized [by statute] to possess such weapons."[19] Those persons are law enforcement officers, certain prison and jail personnel, and members of the United States armed services or reserve forces and the Kansas national guard.[20]
The next exception applies to the sale and possession of an automatic "firearm which has been rendered unserviceable" in a specific manner and is registered and transferred pursuant to the National Firearms Act.[21] The third exception allows the "sale of" an automatic firearm to a laboratory certified by the United States Department of Justice.[22]
Based upon these exceptions, we conclude that Kansas law allows a federally licensed firearms dealer to sell serviceable automatic firearms only to (1) law enforcement officers, certain prison and jail personnel, members of the federal and state armed forces, and (2) a laboratory certified by the United States Department of Justice. Kansas law allows a sale of an automatic firearm that is renderedunserviceable and properly registered and transferred under the National Firearms Act.
The Preemption Doctrine In General
The Supremacy Clause in the United States Constitution gives Congress the power to preempt state law.[23] The preemption analysis starts with the assumption that the historic police powers of the States are not to be superseded by federal law unless that was Congress' clear and manifest purpose.[24] Thus, the preemption determination turns on congressional intent.[25]
Congress' intent may be expressly stated in a statute or implicitly contained within the structure and purpose of the legislation.[26] In the absence of an express statement, federal preemption may be implicit where there is an actual conflict between state and federal law or where the "federal law so thoroughly occupies a particular field" that it leaves no room for state law to supplement it.[27] However, if Congress included a provision defining the preemptive reach of the federal law, it is not necessary to infer Congressional intent as matters beyond the reach of that provision are not preempted and "we need only identify the domain expressly preempted by" such provision.[28]
 The Gun Control Act
In enacting the Gun Control Act, Congress expressly stated that it did not intend to preempt the entire field of regulating firearms:
 "No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together."[29]
Congress clearly stated that no provision in the Gun Control Act preempts state law unless state law directly conflicts with federal law to such a point that the two provisions cannot exist separately.
The legislative history indicates that Congress' main purpose in enacting the Gun Control Act was "`to strengthen Federal controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms within their borders.'"[30] The resulting federal statutory scheme "was designed `to control the indiscriminate flow of such weapons across State borders and to assist and encourage States and local communities to adopt and enforce stricter gun control laws.'"[31]
Given the presumption against the preemption of state police power regulations and the above legislative history, we determine the phrase "direct and positive conflict" does not prohibit a state law that is more restrictive than a provision in the federal law. Accordingly, a provision in the Kansas statute that is more restrictive concerning the possession or sales of firearms is not preempted by the Gun Control Act. This interpretation is supported by the federal regulation implementing the licensing provisions of the Gun Control Act:
 "A license issued under this part confers no right or privilege to conduct business or activity contrary to State or other law. The holder of such a license is not by reason of the rights and privileges granted by that license immune from punishment for operating a firearm or ammunition business or activity in violation of the provisions of any State or other law. Similarly, compliance with the provisions of any State or other law affords no immunity under Federal law or regulations."[32]
 Application of the Preemption Provision
The Gun Control Act allows sales of automatic firearms to persons who are authorized by the United States Attorney General, other federal firearms licensees, and government entities. Kansas law is more restrictive by implicitly disallowing such sales. Thus, even though federal law may allow federally licensed gun dealers to sell automatic weapons to the above-referenced individuals and entities, such sales are prohibited by K.S.A. 2006 Supp. 21-4201. However, K.S.A. 2006 Supp.21-4201 does not prohibit the transportation to or sale of automatic firearms to law enforcement officers, certain jail and prison personnel, and members of the federal and state armed forces.[33]
Regarding the sale of automatic firearms to research entities, the Gun Control Act authorizes such sales to research organizations authorized by the United States Attorney General. Kansas law is more restrictive by implicitly disallowing such sales unless the research organization includes a laboratory certified by the United States Department of Justice. Accordingly, even though federal law may allow federally licensed gun dealers to sell automatic firearms to research organizations authorized by the United States Attorney General, such sales are prohibited by K.S.A. 2006 Supp. 21-4201 unless the sale is to a laboratory certified by the United States Department of Justice.
The remaining exception in the Kansas statute allows a federally licensed firearms dealer to sell to any person unserviceable automatic firearms that have been properly registered and transferred under the National Firearms Act. The Gun Control Act does not appear to have a similar exception or distinguish between a serviceable and unserviceable automatic firearm.[34] Additionally, it appears that the Kansas statutory requirements for rendering an automatic firearm "unserviceable"[35] could result in such firearm being excluded from the definition in the Gun Control Act of a machinegun, i.e., it cannot "be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."[36] Therefore, preemption is not an issue and, thus, federally licensed firearms dealers can sell unserviceable automatic firearms under the above-referenced limitation.
Silencers Federal Law
Under the Gun Control Act, the definition of a firearm includes "any firearm muffler or firearm silencer."[37] Those terms "mean any device for silencing, muffling, or diminishing the report of a portable firearm."[38] Because a silencer is considered a firearm,[39] the provisions that regulate firearms apply to silencers.
The Gun Control Act is very broad in authorizing the sale of silencers by federally licensed gun dealers to other federal firearms licensees[40] as well as to any person who does not meet any of the statutory proscriptions.[41]
 Kansas Law
In contrast to the Gun Control Act, K.S.A. 2006 Supp. 21-4201(a)(6) makes it unlawful for any person to knowingly possess a silencer. The Kansas statute has no express exemption for a federally licensed firearms dealer, but includes three exceptions.
Two of the exceptions that were discussed earlier for automatic firearms also apply to silencers. The first exception applies to a sale of a silencer that has been rendered unserviceable and is properly registered and transferred under the National Firearms Act to any person.[42] The second exception applies to the sale of a silencer to a laboratory that is certified by the United States Department of Justice.[43]
Under the third exception, only law enforcement officers meeting the statutory requirements can possess, during limited operations, a commercially manufactured silencer that is approved by the Department of Justice and owned by the law enforcement agency.[44] Unlike the other two exceptions, the third exception has no express provision for thesale of silencers to such law enforcement agencies.
Reading these provisions together, it appears that Kansas law allows a federally licensed firearms dealer to sell a serviceable silencer to a laboratory that is certified by the United States Department of Justice and a silencer that has been rendered unserviceable and is properly registered and transferred under the National Firearms Act to any person.
 Application of the Preemption Provision to the SilencerLaws
The express preemption provision in the Gun Control Act preempts Kansas law only if there is a "direct and positive conflict" to such a point that the two provisions cannot exist separately.[45] As discussed earlier, this preemption provision does not apply to a state law that is more restrictive than the federal law.
Under the Gun Control Act, a federal firearms dealer isauthorized to possess and sell a silencer to other federal firearms licensees and any other person unless such person is prohibited from possessing or buying a silencer under that Act. Under the Kansas statute, any person, including a federal firearms dealer, isprohibited from possessing or selling silencers unless an exception applies. Kansas law does not have an exception for sales to other federal firearms licensees or persons authorized under the Gun Control Act. Rather, Kansas law allows sales of serviceable silencers only to laboratories certified by the United States Department of Justice. Because Kansas law is more restrictive than federal law, the Gun Control Act does not preempt the Kansas statute. Thus, in Kansas, a federal firearms dealer cannot sell silencers to other federal firearms licensees or persons authorized under the Gun Control Act.
Kansas law does allow unserviceable silencers that are properly registered and transferred under the National Firearms Act to be sold to any person. The Gun Control Act does not appear to distinguish between serviceable and unserviceable silencers or prohibit the sale of unserviceable silencers. Therefore, preemption is not an issue and, thus, federally licensed firearms dealers can sell unserviceable silencers under the above-referenced limitation.
 Summary
Based upon the above-referenced statutes and the history of the Gun Control Act of 1968, it is our opinion that the Act does not preempt K.S.A. 2006 Supp. 21-4201 and, therefore, federally licensed firearms dealers must abide by the prohibitions on possessing automatic weapons and silencers unless an exception applies.
Sincerely,
 Paul J. Morrison Attorney General
 Janet L. Arndt Assistant Attorney General
[1] United States v. O'Neill, 467 F.2d 1372, 1374 (2d Cir. 1972).
[2] Huddleston, 415 U.S. at 824.
[3] Id.
[4] The Gun Control Act sets forth four types of firearms licenses: manufacturer, importer, dealer, and collector. See 18 US.C. § 923(a) and (b).
[5] 18 U.S.C. § 922(a)(1) (no person except a federally licensed dealer shall "engage in the business of . . . dealing in firearms");see also 18 U.S.C. § 921(a)(11) (defining dealer).
[6] 18 U.S.C. § 927(Gun Control Act does not preempt state law unless "direct and positive conflict . . . and [both laws] cannot be reconciled or consistently stand together.") 27 C.F.R. § 478.58 (licensee not immune from state law).
[7] 18 U.S.C. § 921(a)(3)(A) [a firearm includes "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive"].
[8] 18 U.S.C. § 921(a)(28) (a semiautomatic rifle is "any repeating rifle which utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge").
[9] 18 U.S.C. § 921(a)(23) [adopting the definition of machinegun from the National Firearms Act, 26 U.S.C. § 5845(b)].
[10] "[F]irearm designed to discharge or capable of discharging automatically more than once by a single function of the trigger. . . ." K.S.A. 2006 Supp. 21-4201(a)(7).
[11] 18 U.S.C. § 922(b)(4).
[12] Id.
[13] 18 U.S.C. § 922(b)(5).
[14] 18 U.S.C. § 922(o)(1).
[15] 18 U.S.C. § 922(o)(2)(A).
[16] 18 U.S.C. § 921(a)(1) (person includes "any individual, corporation, company, association, firm, partnership, society, or joint stock company").
[17] Huddleston, 415 U.S. at 826-27 (because the Gun Control Act did not define the terms "acquisition" and "other disposition," the Court adopted a broad definition that was based upon the definition of "transfer" from the National Firearms Act).
[18] 26 U.S.C. § 5845(j).
[19] K.S.A. 2006 Supp. 21-4201(b)(4).
[20] K.S.A. 2006 Supp. 21-4201(b)(1) — (3).
[21] K.S.A. 2006 Supp. 21-4201(d).
[22] K.S.A. 2006 Supp. 21-4201(g).
[23] "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S. Const., Art. 6, Cl. 2.
[24] City of New York v. Job-Lot Pushcart, 88 N.Y.2d 163, 166,cert. denied 519 U.S. 871 (1996); Fresno Rifle and Pistol Club, Inc. v.Van De Kamp, 965 F2d 723, 726 (9th Cir. 1992).
[25] Cipollone v. Liggett Group, Inc.,, 505 U.S. 504, 516,120 L.Ed.2d 407, 112 S.Ct. 2608 (1992).
[26] Id.
[27] Id.
[28] Id. at 517.
[29] 18 U.S.C. § 927 (emphasis added).
[30] New York Attorney General Informal Opinion 91-72 (quoting 3 U.S. Code Cong. Admin. News 1968 at 4411). See also People v.Wilmshurst, 53 Cal. Rptr. 3d 136, 142 (2007); State v. Rackis,333 N.J. Super. 332, 344 (2000); Oefinger v. Zimmerman, 601 F. Supp. 405,412 (W.D. Pa. 1984), aff'd 779 F.2d 43
(3rd Cir. 1985).
[31] New York Attorney General Informal Opinion 91-72 (quoting 3 U.S. Code Cong. Admin. News 1968 at 4413).
[32] 27 C.F.R. § 478.58. Emphasis added. See also Wilmshurst,53 Cal. Rptr. 3d at 142; Oefinger, 601 F. Supp. at 412.
[33] We do not address whether a gun dealer would violate the Gun Control Act by doing so; see United States v. Vest, 448 F.Supp.2d 1002
(2006) (provision in Gun Control Act, 18 U.S.C. 922(o)(1)-(2)(A), prohibiting the transfer or possession of a machinegun except "under the authority of" a government entity was unconstitutionally void for vagueness as applied to a law enforcement officer).
[34] However, the National Firearms Act defines an "unserviceable firearm" as "a firearm which is incapable of discharging a shot by means of an explosive and incapable of being readily restored to a firing condition." 26 U.S.C. 5845(h).
[35] Under K.S.A. 2006 Supp. 21-4201(d), an automatic firearm is "rendered unserviceable by steel weld in the chamber and marriage weld of the barrel to the receiver."
[36] 18 U.S.C. § 921(a)(23) adopts the definition of machinegun from the National Firearms Act, 26 U.S.C. § 5845(b) (emphasis added).
[37] 18 U.S.C. § 921(a)(3)(C).
[38] 18 U.S.C. § 921(a)(24).
[39] 18 U.S.C. § 921(a)(3)(c).
[40] 18 U.S.C. § 922(b)(5).
[41] See 18 U.S.C. § 922(b)(1)-(3) and 18 U.S.C. § 922(d)(1)-(9).
[42] K.S.A. 2006 Supp. 21-4201(d).
[43] K.S.A. 2006 Supp. 21-4201(g).
[44] K.S.A. 2006 Supp. 21-4201(f).
[45] 18 U.S.C. § 927; see also 27 C.F.R. § 478.58 (a federally licensed firearms dealer must comply with state laws).